[No. 28253-1-I. Division One. January 27, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. ALA TUITOELAU, JR., *Appellant*.

66

*Colleen E. O'Connor* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* for respondent.

PEKELIS, J. — Ala Tuitoelau, Jr., appeals his exceptional sentence upward for his conviction for first degree rape. We affirm.

## I

Pursuant to Tuitoelau's stipulation, at sentencing the trial court considered the following as the real facts: On the night of September 8, 1990, Sharon J. Hughes was sleeping at home with her five young children. She was awakened from her sleep by the sound of someone on the stairs. When Hughes got up, she saw the shadow of a man whom she recognized as Tuitoelau.

Tuitoelau called out for Hughes' boyfriend, who lived with Hughes, but who was not then present in the house. Hughes and her family had previously experienced problems with Tuitoelau, and Tuitoelau and Hughes' boyfriend had fought in the past. These problems had prompted Hughes on September 28, 1989, to obtain a restraining order prohibiting Tuitoelau from contacting Hughes or anyone in her household for 1 year. The restraining order was in effect on the night in question. Hughes asked Tuitoelau to leave. Tuitoelau told Hughes he had entered the house through a window. Tuitoelau also told Hughes that he was there because he had always wanted her sexually and that he was "going to get her tonight."

Hughes tried unsuccessfully to induce Tuitoelau to leave. At one point, Hughes was able to summon several of her neighbors to her front door. Hughes told them that Tuitoelau was drunk and that he had broken into her home and was scaring her. As the neighbors spoke to Tuitoelau, Hughes retreated into the house. Tuitoelau followed Hughes inside before she could close the door, and the neighbors departed.

Tuitoelau ultimately attacked Hughes, beating and choking her until she lost consciousness. When Hughes regained consciousness, she was upstairs in the bedroom with her 2-year-old child who was asleep. She was no longer wearing her pants or underpants. These items were later found downstairs near the area where Hughes had lost consciousness. Tuitoelau was over Hughes, telling her that "he was going to have sex with her and that if she screamed it would be her last thing." Tuitoelau then forced Hughes to engage in vaginal intercourse and fellatio. Throughout the attack, Tuitoelau talked obsessively about taking Hughes away from her boyfriend. Finally, after Hughes pretended that she would "go with him" and not call the police, Tuitoelau fell asleep.

Before Hughes could summon help, she had to tend to her children. Hughes put her 3-year-old, who had awakened and cried during the attack, back to sleep. She also tended to her 5-year-old, who was ill and vomiting in the bathroom. Hughes then went across the street where she called the police. When the police responded, they saw that Hughes had been severely beaten. Tuitoelau was arrested, and Hughes was taken by ambulance to Harborview Hospital for treatment.

On September 11, 1990, an information was filed charging Tuitoelau with first degree rape, first degree burglary, and second degree assault. Pursuant to a plea agreement, Tuitoelau pleaded guilty to the first degree rape and first degree burglary counts, and the second degree assault count was dismissed.

The sentencing hearing was held on March 15, 1991. The State recommended that Tuitoelau receive an exceptional sentence for his first degree rape conviction. During the hearing, the deputy prosecutor asserted several times that Hughes' 2-year-old child was in the bed during the rape. The trial court considered the statements of Tuitoelau and Hughes before imposing sentence. Hughes testified about the ongoing psychological effect of the attack:

It really bothers me that all this happened to me while my baby was in the room with me . . . [T]o this day I treat him different. There's a different feeling between me and the child. It might have brought us closer; but *he's* [Tuitoelau] still hanging over me.

The trial court imposed an exceptional sentence of 180 months on the first degree rape count. The standard sentencing range for Tuitoelau's first degree rape conviction is 120 to 158 months. The trial court also imposed a sentence of 54 months on the first degree burglary count to run concurrently with the first sentence.

In support of the exceptional sentence on the first degree rape conviction, the trial court entered the following finding of fact:

## I
### FINDINGS OF FACT
1. During the commission of this offense the victim's two year old child was present in the bedroom and bed during the commission of the rape. This fact occurred while the victim was sexually and physically assaulted. The psychological trauma endured by the victim was far greater due to the concern over the well-being of her child while she herself was raped. The defendant was aware of this fact.[1]

The trial court concluded that this factual finding constituted a "substantial and compelling" reason to impose an exceptional sentence. Tuitoelau appeals from the trial court's imposition of an exceptional sentence for his first degree rape conviction.

## II
Tuitoelau claims that the imposition of an exceptional sentence was erroneous because the trial court's finding of fact was not supported by the record and because the psychological trauma suffered by Hughes does not, as a matter of law, justify the imposition of an exceptional sentence.

---

[1]At the sentencing hearing, the trial judge extended the basis for the enhanced psychological trauma experienced by Hughes during the attack, stating that as a result of the presence of Hughes' child in the bed where the rape occurred, "[t]he trauma was greater for [Hughes] because of her fear for her child, fear for *her other children*; . . . that they would see this horrible, horrible incident and be affected by it."

This court's review of the trial court's exceptional sentence is governed by the Sentencing Reform Act of 1981 (SRA), which provides, in pertinent part:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

RCW 9.94A.210(4).

■ Tuitoelau does not argue that his sentence was clearly excessive. Therefore, for purposes of this appeal, the relevant portion of RCW 9.94A.210(4) is subsection (a). Review of subsection (a) involves a 2-part analysis. First, the appellate court must determine if the record supports the trial court's reasons for imposing an exceptional sentence. Because this is a factual question, the trial court's reasons will be upheld if they are not clearly erroneous. *State v. Fisher*, 108 Wn.2d 419, 423, 739 P.2d 683 (1987) (citing *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986)). The appellate court must next determine independently, as a matter of law, whether the reasons given justify the imposition of an exceptional sentence. *Fisher*, 108 Wn.2d at 423.

Here, the trial court's imposition of the exceptional sentence was based on its finding that Hughes' 2-year-old child was in the "bedroom and bed during the commission of the rape" and that Tuitoelau was aware of the child's presence. The trial court concluded that the psychological trauma suffered by Hughes as a result of the child's presence during the attack constituted, as a matter of law, a "substantial and compelling" reason to justify the imposition of an exceptional sentence.

### A

Tuitoelau contends first that the trial court's finding that Hughes' 2-year-old child was in the bed and/or bedroom

where the rape occurred was clearly erroneous because it was not supported by the record.

However, the record shows that the deputy prosecutor made several unchallenged statements at sentencing that Hughes' 2-year-old child was in the bed during the commission of the rape. Even when given the opportunity specifically to respond to the deputy prosecutor's contention that Tuitoelau must have been aware of the child's presence in the bed, Tuitoelau's counsel did not challenge the assertion that the child was in the bed. Further, Tuitoelau's counsel failed to object to the trial judge's oral statement in imposing sentence that Hughes' child was present in the bed during the rape.

■ ■ There is authority for the proposition that under the SRA, the information to which a trial court may look in determining a sentence includes argument by counsel. *See* RCW 9.94A.370(2); *State v. Handley*, 115 Wn.2d 275, 282-83, 796 P.2d 1266 (1990); *State v. Herzog*, 112 Wn.2d 419, 430-31, 771 P.2d 739 (1989). However, even if counsel's assertion during a sentencing hearing is *not* the kind of information which the trial court may consider, it is axiomatic that a party must object and give the trial court an opportunity to rule before this court will consider whether error was committed. Tuitoelau may not challenge for the first time on appeal the trial court's finding that the child was in the bed during the attack. Where a statement of material fact is repeatedly asserted without objection and when the trial court, without objection, accepts and reasserts this statement as a factual basis for imposition of its sentence, the defendant will be deemed to have waived the right to dispute that fact on appeal.

Moreover, Tuitoelau does not dispute that Hughes' child was in the *bedroom* during the attack. The certificate for determination of probable cause contains the statement that some time after Hughes regained consciousness, "[s]he awoke upstairs in the bedroom with her two year old who

was asleep." Further, Hughes stated at the sentencing hearing that her child "was in the room with me" during the attack. The trial court's finding of fact makes clear that the basis for its exceptional sentence was the child's presence during the rape, whether in the bed or the bedroom.

## B

Tuitoelau argues next that the record does not support the trial court's finding that he was *aware* of the child's presence in the bed and/or bedroom. He contends that because the trial court accepted his offer of proof that his severe intoxication on the night of the rape rendered him unable to form the necessary mental state to be deliberately cruel, it must conclude he was unaware of the child.

█ We disagree. The certificate for determination of probable cause, as well as Hughes' statements to the trial judge at the sentencing hearing, support the trial court's finding that Tuitoelau was aware of the circumstances of his crime. Tuitoelau surreptitiously gained entrance into Hughes' house through a window. Before attacking Hughes, Tuitoelau told her that he was in the house because he had always wanted her sexually and that he was "going to get her tonight." Tuitoelau demonstrated substantial mental and physical control throughout the attack: After beating Hughes downstairs, Tuitoelau took off her pants and underpants and carried her upstairs to the bedroom. Once upstairs, Tuitoelau continued to speak to Hughes coherently. He told her that he was going to have sex with her, threatened to kill her if she screamed, and then was able to consummate the rape and sodomy. At the sentencing hearing, Hughes stated that she believed Tuitoelau "knew exactly what he was doing" in carrying out the attack.

This evidence supports the trial court's determination that despite his severe intoxication, Tuitoelau was aware of his surroundings and of what he was doing. Thus, there is substantial evidence to support the trial court's finding that Tuitoelau was aware of the child's presence in the bed and/or bedroom.

## C

Tuitoelau argues finally that the enhanced psychological trauma suffered by Hughes as a result of her child's presence during the rape does not constitute, as a matter of law, a substantial and compelling reason to justify the imposition of an exceptional sentence.

■ Generally, an exceptional sentence is appropriate when the circumstances of a particular crime distinguish it from other crimes within the same statutory definition. *Fisher*, 108 Wn.2d at 424 (citing D. Boerner, *Sentencing in Washington* § 9.6 (1985)). Thus, a trial court may impose an exceptional sentence for an offense if it finds, considering the purpose of the SRA, that there are "substantial and compelling" reasons justifying such a sentence which do not take into account factors already considered in computing the standard range for that offense.[2] RCW 9.94A.120(2); *Nordby*, 106 Wn.2d at 518.

This court has held that the commission of a sexual assault in the presence of young children "may be a particularly outrageous act which merits an exceptional sentence." *In re King*, 54 Wn. App. 50, 53, 772 P.2d 521 (1989). Thus, our courts have upheld exceptional sentences where crimes committed in the presence of children have an adverse psychological impact on the children themselves. *See, e.g., State v. Barnes*, 58 Wn. App. 465, 475, 794 P.2d 52 (1990), *aff'd in part, rev'd in part*, 117 Wn.2d 701 (1991).

Tuitoelau points out that, here, the psychological trauma arising from the presence of Hughes' child during the attack was experienced by *Hughes*, not her child. He contends that *State v. Cuevas-Diaz*, 61 Wn. App. 902, 906-07, 812 P.2d 883 (1991) supports the proposition that the primary victim's trauma cannot form the basis for an exceptional sentence.

In *Cuevas-Diaz*, a woman who had been sleeping in her living room was sexually assaulted by the defendant. 61

---

[2] RCW 9.94A.390 lists several aggravating factors which the court may consider in the exercise of its discretion to impose an exceptional sentence. These factors are illustrative and are not intended to be exclusive reasons for exceptional sentences. *See* RCW 9.94A.390; *Nordby*, 106 Wn.2d at 516.

Wn. App. at 903. The woman managed to escape and ran into a bedroom where her children were sleeping. Shortly thereafter, Cuevas-Diaz pulled open the door to the bedroom and the woman screamed. *Cuevas-Diaz*, 61 Wn. App. at 903. The woman's children witnessed the events that occurred in the bedroom. *Cuevas-Diaz*, 61 Wn. App. at 904. The trial court imposed an exceptional sentence on the basis of its findings that the crime had (1) "impacted the whole community," (2) had a "particularly severe" "emotional traumatic impact upon [the woman]", and (3) "severely traumatized" the woman's children. *Cuevas-Diaz*, 61 Wn. App. at 904.

The Court of Appeals affirmed the exceptional sentence based on the crime's effect on the woman's children, but criticized the trial court's determination that the crime's impact on the community and the woman's emotional trauma constituted valid bases for the imposition of an exceptional sentence. *Cuevas-Diaz*, 61 Wn. App. at 905-06. The court reasoned that the trauma suffered by the community and a crime victim as a result of criminal acts "is foreseeable and it exists in any case." *Cuevas-Diaz*, 61 Wn. App. at 905.

■ *Cuevas-Diaz* is distinguishable from the instant case. There, the trial court's finding did not indicate why the victim's emotional trauma was "particularly severe". Thus, unlike this case, it is unclear in *Cuevas-Diaz* whether the severity of the victim's trauma was the result of her children's presence during the commission of the crime. Furthermore, to the extent *Cuevas-Diaz* can be read as holding that the psychological trauma experienced by a sexual assault victim because of the presence of the victim's children does not constitute a proper basis for imposing an exceptional sentence, we disagree.

The psychological trauma experienced by Hughes in being forcibly raped in the presence of her child was clearly more severe than even the intense trauma normally associated with such an attack. As Hughes told the trial court, she was particularly distressed that the rape occurred

in the presence of her child. Thus, the trial court had a factual basis for its determination that the trauma was greater for Hughes because, in addition to fearing for her own well-being, she feared for the well-being of "her child and her children" who would witness and be terrified by "this horrible . . . incident."

In addition, the resulting trauma to Hughes was foreseeable to Tuitoelau, not only because he was found to have been aware of the child's presence, but because he knew that Hughes had a number of children residing with her. *See State v. Crutchfield*, 53 Wn. App. 916, 928, 771 P.2d 746 (1989). Moreover, the presence of others is foreseeable to persons who unlawfully enter the private residence of another to commit an assault. *See Cuevas-Diaz*, 61 Wn. App. at 906-07.

Thus, in light of the purpose of the SRA, which seeks to ensure punishment that is proportionate to the seriousness of the offense, we conclude that the psychological trauma experienced by a sexual assault victim which arises from the foreseeable presence of the victim's children during the assault constitutes a substantial and compelling reason to impose an exceptional sentence.

We affirm.

WEBSTER, A.C.J., and KENNEDY, J., concur.