[No. 28975-6-I.   Division One.   March 29, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE ZAMORA SANCHEZ, *Appellant*.

*Colleen E. O'Connor* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Theresa Fricke, Senior Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

FORREST, J. — Jose Zamora Sanchez appeals the judgment and sentence finding him guilty of one count of delivery of a controlled substance (cocaine) and imposing an exceptional sentence of 54 months claiming: (1) the trial court's reasons for the exceptional sentence are not supported by the record and are not sufficiently substantial and compelling as a matter of law, (2) the sentence was clearly excessive, (3) the

abuse of discretion standard of review of exceptional sentences should be abandoned, and (4) the sentence violated his right to equal protection. We affirm.

Miguel Ross was a paid police informant. On April 2, 1991, Ross was with Sanchez and arranged to meet with Detective Raj S. Johal of the Eastside Narcotics Task Force. Detective Johal met Ross and Sanchez, drove them to Sanchez's apartment in Bellevue, and bought a gram of cocaine from Sanchez.

The next day, Detective Johal and Ross met with Sanchez at the latter's apartment and Sanchez again sold Detective Johal a gram of cocaine. During this purchase, Detective Johal and Sanchez talked about Detective Johal's possibly buying a larger quantity of cocaine. Sanchez said he had a friend in Yakima who would be coming to Bellevue with a quarter pound of cocaine sometime after April 3.

On April 16, 1991, Detective Johal, Ross, and Sanchez met at a restaurant and discussed Detective Johal's purchase of a kilogram of cocaine from Sanchez for $30,000. The three left the restaurant and went to Sanchez's apartment where Detective Johal purchased a small amount of cocaine from Sanchez. Again, the parties discussed the possibility of Detective Johal purchasing a kilogram of cocaine from Sanchez. The three then went to another restaurant where they met Sanchez's cousin, Jorge Lemus, and discussed the possibility of Detective Johal's purchase of two kilograms of cocaine for $60,000. Sanchez and Lemus told Detective Johal that they would travel to Mattawa, Washington, to get the cocaine.[1]

Before leaving for Mattawa, Sanchez gave Ross a telephone number in Yakima and told him to call that evening. When Ross called the number, a woman informed him that Sanchez "had gone to another place to get the things, to get it, what he needed to pick up" and that Sanchez had instructed her to tell Ross to call back later. When Ross called back, Sanchez told him he and Lemus were leaving to return to Bellevue. At about 2 a.m. on April 17, Sanchez arrived at Ross's apartment where Ross and Detective Johal were wait-

---

[1]Detective Johal testified that Mattawa is near either Yakima or Wenatchee.

ing. Sanchez informed them that other people were waiting outside and that they wanted to complete the transaction in the parking lot. Detective Johal testified that four or five other people were in the parking lot, primarily for surveillance. Detective Johal showed Sanchez $30,000 in his trunk and Sanchez left to pick up the cocaine. Sanchez returned with two men, Heriberto Poledo and Jose Reyes. Poledo counted the money and then informed Sanchez that in the future, Detective Johal and he could deal directly, without a middleman.

Detective Johal, Poledo, and Sanchez returned to Ross's apartment. Reyes returned to the apartment with a kilogram of cocaine. Detective Johal walked out to his car with Poledo and handed Poledo $30,000 in cash. After Poledo accepted the money, Detective Johal signaled for the bust to begin. Sanchez and Reyes were arrested in the apartment and Poledo and others were arrested outside.

Sanchez pleaded guilty to one count of delivery of a controlled substance arising out of the April 16 through 17 transaction. The State agreed not to file charges related to the other transactions. The standard range for the charged crime is 21 to 27 months and the maximum penalty is 10 years. The judge sentenced Sanchez to 54 months' confinement and 1 year of community placement and imposed a $100 fine. The court justified the exceptional sentence as follows:

### I. FINDINGS OF FACT

This is a major drug transaction. The defendant had the ability to get larger quantities of cocaine. The kilo is larger than for personal use. This defendant, unlike the other codefendants, was involved in at least three separate drug transactions. The geographic area for distribution is large including King County, Yakima County, and Eastern Washington. This is more serious than typical drug delivery in that large number of people were involved.

### II. CONCLUSIONS OF LAW

There are substantial and compelling reasons to impose an exceptional sentence under RCW 9.94A.390 in that this is major/more onerous drug offense, had three separate transactions, had large number of people involved and involved broad geographic area.

Sanchez appeals.

## STATEMENT OF THE ISSUES

1. Is the abuse of discretion standard the proper standard to review an exceptional sentence?

2. Did the trial court err in imposing the exceptional sentence?

3. Did the exceptional sentence violate Sanchez's right to equal protection and was it excessive?

## ISSUE 1
### STANDARD OF REVIEW

■ Sanchez contends that the use of the abuse of discretion standard for appellate review of an exceptional sentence subverts the intent of the Sentencing Reform Act of 1981 (SRA) by vesting nearly unbridled discretion in the sentencing court. We disagree. Although there has been occasional criticism,[2] no case has departed from the abuse of discretion standard and it remains the standard of review for exceptional sentences.[3]

## ISSUE 2
### EXCEPTIONAL SENTENCE

Does the record support an exceptional sentence?

Sanchez contends the court's reasons for the exceptional sentence are not supported by the record and are not sufficiently substantial and compelling as a matter of law to establish a major VUCSA because: (1) the transaction did not involve an amount substantially larger than for personal use, (2) was not sophisticated, and (3) did not involve a broad geographic area of disbursement.[4]

---

[2]Sanchez cites: *State v. Pascal*, 108 Wn.2d 125, 140, 736 P.2d 1065 (1987) (Goodloe, J., dissenting); *State v. Armstrong*, 106 Wn.2d 547, 552, 723 P.2d 1111 (1986) (Goodloe, J., dissenting); *State v. Dyer*, 61 Wn. App. 685, 690, 811 P.2d 975 (Shields, J., dissenting), *review denied*, 117 Wn.2d 1029 (1991); *see also State v. Creekmore*, 55 Wn. App. 852, 873, 783 P.2d 1068 (1989) (Forrest, J., concurring), *review denied*, 114 Wn.2d 1020 (1990).

[3]*See, e.g., State v. George*, 67 Wn. App. 217, 227, 834 P.2d 664 (1992), *review denied*, 120 Wn.2d 1023 (1993).

[4]"To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are

An exceptional sentence above the standard range may be imposed if "[t]he current offense was a major violation of the Uniform Controlled Substances Act, chapter 69.50 RCW (VUCSA), related to trafficking in controlled substances, which was more onerous than the typical offense of its statutory definition[.]" RCW 9.94A.390(2)(d). That section lists six factors, the presence of any one of which may identify the current offense as a major VUCSA.

The trial court relied on three of these factors: (1) a kilogram of cocaine is greater than an amount for personal use, (2) Sanchez was involved in at least three separate drug transactions, and (3) the offense involved a large number of people and a broad geographic area of disbursement.

1. Greater Than an Amount for Personal Use.

One factor which identifies an offense as a major VUCSA is: "The current offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use[.]" RCW 9.94A.390(2)-(d)(ii).

Detective Johal, a detective with 12½ years of experience and substantial training in narcotics investigation, testified that the purchase of a kilogram of cocaine would not be for personal use, even for someone heavily addicted to cocaine.[5]

---

not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient." RCW 9.94A-.210(4).

Review under RCW 9.94A.210(4) involves a 3-part inquiry: "The reviewing court must first determine if the court's reasons for imposing the sentence are supported by the record. These reasons will be upheld if they are not clearly erroneous. Second, the reviewing court must independently determine if the reasons justify the imposition of the sentence. The standard of review is error of law. Finally, the reviewing court must determine if the sentence imposed was excessive, under an abuse of discretion standard." (Citations omitted.) *State v. Longuskie*, 59 Wn. App. 838, 845-46, 801 P.2d 1004 (1990).

[5]Detective Johal testified: "If someone was heavily addicted to cocaine, from my experience being associated with persons who used it, they would use anywhere from an ounce to two ounces a week, and we're talking about 34 ounces of cocaine, which is a large amount of cocaine to consume. If you were heavily addicted, it would take you quite a long time."

■ *State v. Gunther*[6] involved a conviction for the delivery of one-quarter pound of cocaine. The parties had negotiated for the delivery of one-half pound. The trial court imposed an exceptional sentence because the amount of drugs involved was substantially larger than for personal use and because the defendant possessed a firearm during the commission of the offense. On appeal, the court held that the amount of drugs involved, standing alone, supported a finding that the offense was a major VUCSA. If a half pound of cocaine is an amount greater than for personal use, a kilogram, which is approximately 2.2 pounds, is clearly an amount greater than for personal use.

In light of this, the trial court's reason was supported by the record and justifies an exceptional sentence as a matter of law.

2. Three Separate Drug Transactions.

Another factor that identifies an offense as a major VUCSA is: "The current offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so[.]" RCW 9.94A.390(2)(d)(i).[7] The record supports the court's factual findings that Sanchez sold Detective Johal cocaine on three separate occasions prior to the transaction for which he was charged.[8]

■ The issue is whether the transactions of April 2 and 3 were part of the "current offense" of which Sanchez was found guilty. Sanchez contends they were not part of the current offense because they were not encompassed within the charging document. We disagree. There is no statutory

---

[6]45 Wn. App. 755, 727 P.2d 258 (1986), *review denied*, 108 Wn.2d 1013 (1987).

[7]In 1986, the "Aggravating Circumstances" subsection of RCW 9.94A.390 was amended to change the word "offense" to "current offense". " 'The . . . amendment added the adjective "current" to subsection (2) to make it clear that aggravating factors only apply to the *circumstances surrounding the charged offense.*' " *State v. Houf*, 120 Wn.2d 327, 331, 841 P.2d 42 (1992) (quoting Washington Sentencing Guidelines Comm'n, *Implementation Manual* § 9.94A.390 comment, at II-77 (1991)).

[8]Sanchez admitted to selling cocaine three times prior to the sale for which he was arrested.

requirement that the transactions be charged nor has San-chez cited any case so holding. Sentencing proceedings under the SRA are separate and distinct from trial and many trial rights do not apply. Significantly, aggravating circumstances need only be established by preponderance of the evidence.[9] Many times the decision to seek an exceptional sentence will not be made until after a trial or plea. Indeed, the facts to support such a request often are not known until some time after guilt has been determined. To require charging of aggravating circumstances would totally subvert the SRA sentencing procedures and add enormous trial complications often to the distinct disadvantage of the defendant on the crucial finding of guilty or not guilty of the charge. We hold that it is not necessary to charge the three drug transactions which may constitute an aggravating circumstance.

In this regard, we note that the record does not reflect whether or not Sanchez was advised in the plea bargain that the State intended to use his prior sales of cocaine to Detec-tive Johal as a basis for an exceptional sentence.[10] Because this issue was not raised, we find it unnecessary to address it. At a minimum, however, we think it would be highly desirable in those cases where the State agrees not to charge other known crimes and where such crimes might be used as a basis for an exceptional sentence, that the record reflect that the defendant was made aware of this fact prior to entry of a plea of guilty in order to avoid any later challenge to the validity of the plea.[11] We note that if an objection had been

---

[9]*See, e.g., State v. Strauss*, 54 Wn. App. 408, 773 P.2d 898 (1989); RCW 9.94A-.370(2).

[10]Sanchez's statement on the guilty plea and the record of the plea proceedings reflect Sanchez's acknowledgment of the fact that the State did not have a specific recommendation and that the State agreed not to file any other charges arising from the police report.

[11]*See State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980) (a defendant must be informed of all the direct consequences of his plea prior to acceptance of a guilty plea); CrR 4.2(d) ("The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea.").

made to this use of the crimes in this case, the State could have charged the crimes with a high probability of securing a conviction. If Sanchez was before the court with four delivery convictions, his standard range sentence would be far in excess of the exceptional sentence he in fact received, so there was clearly no prejudice.

Neither party cites any authority that discusses the meaning of "current offense". The term is not defined in the Sentencing Reform Act of 1981. In *State v. Houf*,[12] the court interpreted the 1986 amendment to the "Aggravating Circumstances" subsection of RCW 9.94A.390[13] to "indicate that any aggravating factors considered in imposing an exceptional sentence should be related to the crime with which the defendant is charged." *State v. Houf, supra* at 334. The prior sales to Detective Johal were related to the April 17 sale of the kilogram in that the sales involved the same purchaser and seller. Also, Detective Johal testified that the prior sales were made "[t]o build trust and friendship" with Sanchez. Presumably, Detective Johal wanted to build trust and friendship in order to facilitate the purchase of the kilogram.[14] Viewing the circumstances in their entirety, the prior sales were "related" and the trial court properly used the prior sales as justification for the exceptional sentence.

Sanchez argues that this result is prohibited by the "real facts" doctrine. We disagree. RCW 9.94A.370(2) provides in part: "Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2) (c), (d), and

---

[12]120 Wn.2d 327, 841 P.2d 42 (1992).

[13]See footnote 7.

[14]By contrast, in *Houf*, the defendant was convicted of unlawful delivery of a controlled substance. One of the trial court's reasons for imposing the exceptional sentence was that the defendant had lied while testifying at trial. The Supreme Court invalidated this reason and held that "[t]estimony at trial cannot be fairly labeled a 'circumstance surrounding the charged offense'." *State v. Houf*, 120 Wn.2d 327, 331, 841 P.2d 42 (1992).

(e)." Each of these subsections contemplates the imposition of an exceptional sentence based, at least in part, upon acts for which the defendant might have been criminally charged. For example, under subsection (c), an aggravating factor is "a major economic offense or series of offenses" identified by, *inter alia*, multiple victims or multiple incidents per victim. RCW 9.94A.390(2)(c). Under subsection (f) (formerly subsection (e)), an aggravating factor is that the offense was part of "an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time". RCW 9.94A.390(2)(f). Similarly, an offense may be identified as a major VUCSA if it involved "at least three separate transactions". RCW 9.94A-.390(2)(d)(i).

Under each of these subsections, identification of an aggravating factor necessarily entails the inclusion of past acts for which the defendant could have been charged. We find the legislative intent clear that the "real facts doctrine" does not apply to uncharged crimes that are used for purposes of establishing an aggravating factor pursuant to these subsections. The trial court properly treated the three previous sales to Detective Johal as establishing a VUCSA which in turn is itself an aggravating factor.

3. Large Number of People and Broad Geographic Area of Disbursement.

Another factor that identifies an offense as a major VUCSA is: "The current offense involved a high degree of sophistication or planning or occurred over a lengthy period of time or involved a broad geographic area of disbursement[.]" RCW 9.94A.390(2)(d)(v).

a. High degree of sophistication or planning.

The court relied on the fact that a large number of people were involved.[15] Although suggestive of sophistication and

---

[15]The court found:

"This is a major drug transaction. The defendant had the ability to get larger quantities of cocaine. The kilo is larger than for personal use. This defendant, unlike the other co-defendants, was involved in at least three separate drug transactions. The geographic area for distribution is large including King

planning, baldly stated in isolation this fact would not necessarily establish a VUSCA. Here, reading the finding in its entirety, it is clear that the court was treating these facts as establishing "sophistication or planning" and the record fully supports the conclusion.

■ To constitute a justification for an exceptional sentence, the sophistication must be of a kind not typically associated with the commission of the current offense.[16]

Detective Johal testified:

> This particular kilo of cocaine deal was an unusual one and was sophisticated in that never have we encountered, as members of the Eastside Narcotics Task Force, the amount of counter-surveillance being done by the suspects outside the apartment building. There were people on foot, there were people in cars.
>
> As I stated, one particular car got away. We had a K-9 officer out there trying to track a person who was on foot, who got away. There was a lot of lookouts and we normally don't run into that.

These facts are sufficient to establish "sophistication or planning".

b. Broad geographic area of disbursement.

Sophistication or planning or broad area are stated in the statute in the disjunctive, although normally there will be overlap as applied to the facts present.

Neither party cites a case which defines "broad geographic area of disbursement" and the term is not defined in the statute. Both parties cite State v. Stalker,[17] but that case

---

County, Yakima County, and Eastern Washington. This is more serious than typical drug delivery in that large number of people were involved."

[16]State v. Dunaway, 109 Wn.2d 207, 219, 743 P.2d 1237, 749 P.2d 160 (1987).

[17]42 Wn. App. 1, 707 P.2d 1371 (1985), review denied, 107 Wn.2d 1018 (1986). The defendant in Stalker obtained drugs from Florida and indicated that larger quantities could be supplied from Florida. The trial court found that the crime was a major drug transaction involving a broad geographic area of disbursement and an amount of marijuana substantially more than necessary for personal use. This court affirmed the exceptional sentence, stating that the quantity of drugs involved was sufficient to identify the offense as a major VUCSA. The court did not comment upon whether the sentence could also be justified as involving a broad geographic area of disbursement.

does not analyze the meaning of the phrase nor does it make a direct holding based on the facts as constituting a broad geographic area.

■ Although "broad geographic area of disbursement" suggests something more than the transportation of the drugs in question from one area to another, for purposes of this case we do not need to attempt a general definition. This is best accomplished on a case-by-case basis. Here, even accepting the State's view that the phrase is equivalent to the drugs being transported over a substantial distance, we find that transporting the drugs from the Yakima area to Bellevue does not satisfy this requirement. The consequences of an exceptional sentence are extremely serious, often resulting in sentences more than double the standard range. We are satisfied that the Legislature, in providing this ground for an aggravating factor, contemplated something significantly more distinctive and more comprehensive than the mere linear transportation from the Yakima area to Bellevue, a distance of approximately 140 miles.

■ With the exception of the "broad geographic area of disbursement", the record supports the trial court's findings and the reasons given are compelling reasons justifying an exceptional sentence. It is obvious that the trial court would impose the same sentence even in the absence of this one component of one of the aggravating factors. Accordingly, there is no need for remand.[18]

ISSUE 3
LENGTH OF SENTENCE

Is the sentence "excessive" or does it violate equal protection?

■ ■ "[T]he question of whether a sentence is clearly excessive is reviewed under an abuse of discretion standard.

---

[18]"When some of the trial court's justifications for imposing an exceptional sentence are improper, a reviewing court can nonetheless affirm the sentence if the principal justifications on which the trial court relied are proper and the reviewing court is confident the trial court, on remand, would impose the same sentence absent the improper justifications." *State v. Farmer*, 116 Wn.2d 414, 432, 805 P.2d 200, 812 P.2d 858 (1991).

Discretion is abused when it is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." (Citation omitted.) *State v. Brown*, 60 Wn. App. 60, 76, 802 P.2d 803 (1990), *review denied*, 116 Wn.2d 1025 (1991); *see also State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986) (a clearly excessive sentence is one that no reasonable person would impose). A sentence is not clearly excessive merely because it exceeds twice the presumptive range.[19] However, the length of an exceptional sentence must have "some basis in the record". *Brown*, 60 Wn. App. at 77.

The record here shows that the offense fulfilled three of the six criteria for a major VUCSA. It cannot be said that no reasonable judge would have imposed a sentence of 54 months, which is twice the high end of the standard range. The sentence was therefore not clearly excessive.

Sanchez contends the exceptional sentence violated his right to equal protection because his similarly situated codefendant, Poledo, received a standard-range sentence of 27 months.

An equal protection challenge to a sentence raised by a codefendant is analyzed in two parts:

> [I]f a defendant can establish that he or she is similarly situated with another defendant by virtue of near identical participation in the same set of criminal circumstances, then the defendant will have established a class of which he or she is a member. Only after membership in such a class is established will equal protection scrutiny be invoked. Then, only if there is no rational basis for the differentiation among the various class members will a reviewing court find an equal protection violation.

*State v. Handley*, 115 Wn.2d 275, 290, 796 P.2d 1266 (1990).

Sanchez was not similarly situated with Poledo under the *Handley* test. The record is unclear as to exactly when Poledo became involved in the transaction or precisely what his role was.[20] The first time Poledo appears in the record is after

---

[19]*Oxborrow*, at 531.

[20]Poledo's statement that he and Johal could deal directly in the future is, without more, insufficient to place him "similarly situated" with Sanchez. The statement could have been an invitation or suggestion by Poledo made without the ability to fulfill on his part.

Sanchez returned from Yakima with the kilogram of cocaine. The record does not show that Poledo was involved in arranging the pickup of cocaine in Yakima, as was Sanchez, or that Poledo accompanied Sanchez either going to or coming from Yakima to bring the drugs to the place of sale. The record also does not indicate that Poledo was involved at all in the negotiations for Detective Johal's purchase of the kilogram. Sanchez, on the other hand, was involved in the transaction from its inception, and made three other sales leading up to the charged offense. Sanchez has not demonstrated that he and Poledo had "near identical participation in the same set of criminal circumstances[.]" *Handley*, 115 Wn.2d at 290. Therefore, equal protection analysis of the disparity between the sentences is not appropriate.

Affirmed.

WEBSTER, C.J., and KENNEDY, J., concur.

Review denied at 121 Wn.2d 1031 (1993).