912 P.2d 494 (1996)
80 Wash.App. 851
The STATE of Washington, Respondent,
v.
Renee Melina REYNOLDS, Appellant.
No. 17803-6-II.
Court of Appeals of Washington, Division 2.
February 9, 1996.
Publication Ordered March 15, 1996.
*496 Michael Roy Foister (court appointed), Vancouver, for Appellant.
*497 Dana M. Field, Clark County Prosecuting Atty., Vancouver, for Respondent.
*495 PER CURIAM.
Renee Melina Reynolds appeals sentences in excess of the Sentencing Reform Act standard range imposed by the Clark County Superior Court, for two counts of delivery of a controlled substance and one count of delivery of a material in lieu of a controlled substance. This matter was initially heard by a commissioner of this court, who referred it to a panel of judges. We vacate the sentence and remand for resentencing.
Reynolds's arrest and prosecution was part of an investigation of biker gangs and other individuals involved in the manufacture and distribution of chemicals used in the production of methamphetamine. During a two-week period, she twice sold methamphetamine to undercover officers, and, on another occasion, she sold them material she thought was methamphetamine.
At the sentencing hearing, Pierce County Detective Prather testified that at the time of the first transaction, he and Reynolds began negotiating a sale of $15,000 worth of chemicals to produce methamphetamine. Reynolds gave Prather the impression that she could arrange such a transaction, and he hoped she would lead him to other individuals involved in the methamphetamine trade. According to Prather, during these discussions, Reynolds bragged about how she "walked" on a prior drug charge because the police did not ask her if she owned the purse they searched. He said she also told him that she had lied about her identity to an officer from Oregon, but he knew she was a drug dealer.
The maximum sentence for each of Reynolds's crimes is sixty months. RCW 69.50.401(a)(1)(ii) and (b)(1)(ii). However, her offender score[1] gives her a standard range of sixty-seven to eighty-nine months. The court imposed a sentence of sixty-seven months, ostensibly by making at least two of the sentences consecutive.[2] In support of this exceptional sentence, the court made the following findings:
1. The defendant was operating above the level of a mere street dealer as she was attempting to arrange a large drug transaction for $15,000.00 involving a purchase of either gallons of hydriodic acid or two pounds of finished methamphetamine which would and does constitute a major violation of the Controlled Substances Act and establish her position in the drug hierarchy as a broker/dealer.
2. The current offense was a major violation of the Uniformed Controlled Substances Act and involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so. See RCW 9.94A.390(2)(d)(i).
3. The current offense involved at least three separate transactions in which either controlled substances or materials represented to be controlled substance[s] were sold, transferred or possessed with intent to do so. See RCW 9.94A.390(2)(d)(i).
4. Police were at all times pursuing a legitimate undercover investigation and law enforcement purpose and multiple transactions with the defendant were a necessary integral part of the investigation to penetrate the hierarchy involved in methamphetamine production.
5. The multiple offense policy of RCW 9.94A.400 has not been given full force and effect due to the sixty month statutory maximum for a Class C felony of the cap is applied and results in a sentence that is clearly too lenient in light of the purposes of this chapter as expressed in RCW 9.94A.010 due to the defendant's commission of repeated drug crimes which should be scored as three points and result in a substantial increase in the standard range.
6. The defendant during the course of the undercover investigation bragged to the officer about being stopped previously by police, having been found with dope in *498 her purse, and that because police had made a mistake, she had walked on the charge.
7. The defendant's conduct and attitude demonstrate a lack of respect for the law and lack of remorse which results in the sixty month statutory maximum sentence being clearly too lenient in light of the SRA.
8. The defendant also bragged to police about prior efforts to thwart police by utilization of a false name.
9. The defendant's behavior in resuming criminal activity shortly after the prior charge demonstrates a lack of respect for the law and the criminal justice system.
10. The defendant's behavior and comments to police during undercover investigation also demonstrates a disrespect for the law and the criminal justice system and a callous disrespect for the law.
11. Both the defendant's comments and behavior during the investigation, as well as, in her presentation in court demonstrate a lack of remorse for criminal conduct and a callous disrespect for the law.
. . . .
14. The multiplicity of counts and the multiple offense policy is not being given full force and effect. One of the defendant's current offenses, therefore, is receiving no additional punishment resulting in a sentence which is clearly too lenient and constitutes an aggravating factor justifying imposition of an exceptional sentence in the form of running the counts consecutively to achieve a sixty-seven month sentence.
Reynolds argues that (1) the evidence does not support the findings regarding aggravating factors, and (2) the court violated the real facts doctrine when it considered testimony by Prather.[3]
This court's review of an exceptional sentence is governed by RCW 9.94A.210(4) which states:
To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.
Review under subsection (a) involves a two-part analysis. First, this court must determine if the record supports the trial court's reasons for imposing an exceptional sentence. State v. Tuitoelau, 64 Wash.App. 65, 70, 822 P.2d 1222 (1992). Because this is a factual question, this court will uphold the trial court's reasons if they are not clearly erroneous. Tuitoelau, 64 Wash.App. at 70, 822 P.2d 1222; State v. Fisher, 108 Wash.2d 419, 423, 739 P.2d 683 (1987) (citing State v. Nordby, 106 Wash.2d 514, 517-18, 723 P.2d 1117 (1986)). Next, this court determines independently whether the trial court's reasons justify the imposition of an exceptional sentence. Tuitoelau, 64 Wash.App. at 70, 822 P.2d 1222.
Reynolds first challenges the finding that her current conduct constitutes a major violation of the Uniform Controlled Substances Act because it involved three separate sales of controlled substances, RCW 9.94A.390 (2)(d)(i). She asserts that the evidence does not support this finding because only two sales involved actual controlled substances.
The plain language of RCW 9.94A.390(2)(d)(i) clearly requires at least three transactions involving a controlled substance. Thus, it does not appear that the trial court can rely on the third sale to establish a major drug transaction. However, the trial court also found that Reynolds's negotiation of a $15,000 sale established her as a dealer/broker, satisfying the requirements of RCW 9.94A.390(2)(d). Reynolds does not challenge the accuracy of this evidence, but argues that the trial court's consideration of it violated the real facts doctrine.
*499 The "real facts" doctrine is codified in RCW 9.94A.370(2), which provides:
In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing.... Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in [the statute].
This policy was adopted in order to limit sentencing decisions to facts which are acknowledged, proven or pleaded. State v. Houf, 120 Wash.2d 327, 332, 841 P.2d 42 (1992). Courts have also interpreted the doctrine as excluding consideration during sentencing of uncharged crimes or charged crimes that were later dismissed. Houf, 120 Wash.2d at 332, 841 P.2d 42; State v. McAlpin, 108 Wash.2d 458, 466, 740 P.2d 824 (1987). However, a trial court may consider facts that establish elements of additional uncharged crimes to enhance a sentence when those facts are part and parcel of the current offense. State v. Tierney, 74 Wash. App. 346, 352, 872 P.2d 1145 (1994), cert. denied, ___ U.S. ____, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995). "The real facts doctrine only bars reliance on those facts wholly unrelated to the current offense or those facts which would elevate the degree of the crime charged to a greater offense than charged." Tierney, 74 Wash.App. at 352, 872 P.2d 1145.
Officer Prather testified as follows regarding the negotiations:
[T]he basic meet, the informant set up the time and place to make the deal with the idea of speaking regarding selling some precursor chemicals, specifically hydriodic acid.
. . . .
And during our meet at a restaurant in Orchards Miss Reynolds spoke about how she had partied at the Freesolds Motorcycle Club here in Vancouver, and that she had also met the president of the Gypsy Jokers Outlaw Motorcycle Club that is stationed in Eugene.
She asked____she said she was in the market for chemicals. Based on my terminology and experience, I know that outlaw motorcycle gangs are responsible for production and distribution of methamphetamine.
I spoke with Miss Reynolds about the price, that it would be $15,000 for five gallons, or two____or two pounds of finished product, finished methamphetamine. Again she wanted to negotiate.
She said, "Is there, you know, can we negotiate a little bit?" ...
She also went along further in regards to asking what her cut was, what her____ how much she'd make out of the deal....
And also she explained that she was nervous about doing the actual drug transaction in the lounge, but because she knew one of the waitresses in Denny's was a____ as a____was a cocaine addict, that she felt more comfortable doing that.
And so the deal actually did occur in the restaurant, and practically in front of the waitress.
During the second purchase, Prather asked about the chemicals again. Reynolds said she had not been able to make contact with anybody yet. The negotiations were clearly part of the ongoing relationship between the undercover officers and Reynolds. The trial court's consideration of that evidence did not violate the real facts doctrine.
The fact that Reynolds committed a major violation of the controlled substances act is sufficient reason to impose an exceptional sentence. See State v. Caldera, 66 Wash.App. 548, 832 P.2d 139 (1992);[4] and *500 State v. Gunther, 45 Wash.App. 755, 727 P.2d 258 (1986), review denied, 108 Wash.2d 1013 (1987).[5]
Reynolds next challenges the trial court's finding that she lacked remorse and had a callous disrespect for the law, as shown by (1) her bragging to the undercover officer about how she "walked" on a prior offense and lying to officers as to her identity; and (2) her resumption of criminal activity shortly after the prior charge was dismissed. Again, she argues that the sentencing court violated the real facts doctrine. Again, her reliance on this doctrine is misplaced. The evidence was relevant to Reynolds' position in the drug hierarchy, and neither her evasion of conviction, nor her lying to a police officer are chargeable offenses. The real facts doctrine does not preclude consideration of misbehavior that does not rise to the level of a crime, or enhance another crime.
Reynolds also argues that in considering the fact that she evaded punishment for the prior crime, the sentencing court penalized her for asserting her constitutional rights. This argument is unpersuasive. The sentencing court relied not on the fact that she asserted her rights, but on the fact that she bragged about how she "walked." The court could properly find that this bragging demonstrated a lack of remorse for her crime and a lack of respect for the criminal justice system.
Finally, it should be noted that Reynolds did not object below to the court's consideration of this evidence. In sentencing, as at trial, "it is axiomatic that a party must object and give the trial court an opportunity to rule before this court will consider whether error was committed." Tuitoelau, 64 Wash.App. at 71, 822 P.2d 1222. When the defendant fails to object to information presented at sentencing, that information is deemed acknowledged. See State v. Handley, 115 Wash.2d 275, 283, 796 P.2d 1266 (1990).[6] Thus, an appellant may not challenge for the first time on appeal the trial court's findings of fact where those findings are a result of assertions made at the sentencing hearing without objection. Tuitoelau, 64 Wash.App. at 71, 822 P.2d 1222.
The lack of remorse and lack of respect for the law demonstrated in this case is sufficient to constitute an aggravating factor. State v. Butler, 75 Wash.App. 47, 54, 876 P.2d 481 (1994), review denied, 125 Wash.2d 1021, 890 P.2d 463 (1995); State v. Bedker, 74 Wash.App. 87, 100, 871 P.2d 673, review denied, 125 Wash.2d 1004, 886 P.2d 1133 (1994); State v. Ross, 71 Wash.App. 556, 563, 861 P.2d 473 (1993), review denied, 123 Wash.2d 1019, 875 P.2d 636 (1994).
Likewise without merit is the assertion that the exceptional sentence was based on "unproven inferences" that Reynolds had sold drugs to people with children. Reynolds bases this claim on certain oral comments made by the court. The court did not include those statements in its written findings, and this court will not further consider this claim.[7]
Finally, Reynolds challenges the finding that a sixty-month sentence would be clearly too lenient because it would not provide *501 punishment for her third offense. RCW 9.94A.400. She argues that excluding count III, she would have had an offender score of three, providing a sentence of thirty-six to forty-eight months for counts I and II, and leaving an additional twelve months for count III. Thus, she is receiving some punishment for the third crime.
Under RCW 9.94A.420,
If the presumptive sentence duration given in the sentencing grid exceeds the statutory maximum sentence for the offense, the statutory maximum sentence shall be the presumptive sentence.
When the operation of RCW 9.94A.420 causes the defendant's presumptive sentence to be the same even if he had committed fewer crimes, the trial court has the right to conclude that the presumptive sentence is clearly too lenient, as provided in RCW 9.94A.390(2)(g). State v. Stewart, 125 Wash.2d 893, 898-99, 890 P.2d 457 (1995). Further, the trial court may properly conclude that the sentence is clearly too lenient where the presumptive sentence does not adequately account for all crimes, even if the defendant does not receive a "free crime." See State v. Smith, 123 Wash.2d 51, 56, 864 P.2d 1371 (1993), holding that "[b]oth public policy and the stated purposes of the SRA demand full punishment for each current offense." Smith, 123 Wash.2d at 56, n. 4, 864 P.2d 1371.
Here, even under Reynolds's argument, the operation of RCW 9.94A.420 results in punishment for her third offense that is well below the presumptive range. The trial court could properly conclude that such a sentence is clearly too lenient.
An exceptional sentence is justified in this case. However, it is not clear how the trial court arrived at the sentence. While the court said it was imposing consecutive sentences, the judgment and sentence, itself, provides for three concurrent 67 month sentences. Such sentences exceed the statutory maximum. RCW 9.94A.040(4)(c); RCW 9.94A.120(11); RCW 9.94A.420; see also Stewart, 125 Wash.2d at 898, 890 P.2d 457; and State v. Creekmore, 55 Wash.App. 852, 866, 783 P.2d 1068 (1989), review denied, 114 Wash.2d 1020, 792 P.2d 533 (1990); RCW 9.94A.420. Further, if the court were to impose consecutive sentences totalling sixty-seven months, some of those sentences would have to be below the standard range. Yet the court provided no mitigating factors justifying such sentences. In any case, it would be inconsistent to make mitigated sentences consecutive. Thus, the court must impose sixty month sentences. It can make them all concurrent, or it can make one or more of them consecutive, achieving a sentence of either, 120 or 180 months.
We remand this case to the sentencing court to allow it to consider these alternatives. State v. Sanchez, 69 Wash.App. 195, 207, 848 P.2d 735, review denied, 121 Wash.2d 1031, 856 P.2d 382 (1993). The sentence is accordingly vacated, and this case is remanded for imposition of a sentence consistent with the findings herein.
NOTES
[1] Reynolds's offender score is based on her two other current offenses. She has no prior offenses.
[2] This is what the court said it was going to do, and what the conclusions of law say that it did. However, the judgment and sentence imposes three concurrent sixty-seven month sentences.
[3] Reynolds also assigns error to the court's failure to enter findings and conclusions. The court has since filed its findings and conclusions.
[4] The exceptional sentence in Caldera was based on the size of the drug transaction. The initial transaction was for $16,000 worth of cocaine. Caldera argued that because only nine ounces of cocaine was delivered instead of nineteen ounces, the exceptional sentence should be reversed. The court held that the nine ounces actually delivered did not diminish the size of the intended transaction. "It was appropriate for the trial court to consider the negotiated amount and the amount delivered as being part of the same transaction." Caldera, 66 Wash.App. at 551, 832 P.2d 139.
[5] In Gunther, the trial court found that the negotiation and delivery was one transaction, justifying an exceptional sentence, even though the defendant negotiated for the sale of half a pound of cocaine but actually delivered only a quarter pound).
[6] The Handley court held:

[W]e hold that a sentencing court may rely on information which is admitted, acknowledged, or proved at the time of sentencing or at trial and that the sources for obtaining this information are not limited to presentence reports or plea statements. Furthermore, to dispute any of the information presented for consideration, a defendant must make a timely and specific challenge. If a defendant does make such a challenge, the court must either hold an adversary hearing or not consider the properly challenged information.
Handley, 115 Wash.2d at 286, 796 P.2d 1266.
[7] "Error cannot be predicated on the oral decision of the trial court." Mairs v. Department of Licensing, 70 Wash.App. 541, 545, 854 P.2d 665 (1993) (citing Jones v. National Bank of Commerce, 66 Wash.2d 341, 344, 402 P.2d 673 (1965). The oral opinion itself is not a finding of fact. State v. Williamson, 72 Wash.App. 619, 623, 866 P.2d 41 (1994). An oral decision by the trial court which is inconsistent with the written findings cannot be used to impeach those written findings. Johnson v. Whitman, 1 Wash.App. 540, 546, 463 P.2d 207 (1969).