# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49179-6-II |
| | (Consolidated with |
| | 49200-8-II and 49208-3-II) |
| Respondent, | |
| v. | |
| JANET L. GLEASON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Janet Lynn Gleason appeals the trial court's imposition of consecutive sentences on two sets of charges for which she was sentenced on the same day and the trial court's refusal to sentence her under the Drug Offender Sentencing Alternative[1] (DOSA). The State concedes that the trial court erred when it imposed the sentences consecutively without entering an exceptional sentence. We accept the State's concession and further hold that Gleason has failed to preserve her DOSA issue. Accordingly, we affirm in part, reverse in part, and remand for resentencing.

## FACTS

### I. OFFENSES AND GUILTY PLEAS

In September 2015, the State charged Gleason with possession of methamphetamine with intent to deliver. In October 2015, the State charged Gleason with residential burglary, first degree

---

[1] RCW 9.94A.660.

trafficking in stolen property, and second degree malicious mischief under a separate cause number. The victim of the residential burglary was the Lewis County Prosecutor.

According to the statement of probable cause for the residential burglary charge, the officers investigating the burglary spoke to Robert Collins, who told them that he had been present when Gleason committed the burglary and that she had told him that she committed the burglary of the prosecutor's home to retaliate against him for pursuing criminal charges against her (Gleason's) son.[2] When the officers later interviewed Gleason, she admitted that she was present when the burglary occurred and had received some of the stolen property, but she asserted that she just happened to be present and was not involved in the burglary.

On March 30, 2016, Gleason pleaded guilty to the September 2015 and October 15 charges, including the residential burglary. The trial court accepted the guilty pleas.

In the plea statement addressing the residential burglary, Gleason stated in part,

> On February 10, 2015, in Lewis County, either as a principal or an accomplice, I entered the residence or dwelling [in question], with the intent to commit a crime. While in said residence or dwelling, I, or my accomplice, stole personal property with the intent to deprive the owner of said personal property.

Clerk's Papers (CP) at 139. Nothing in the plea statement mentioned Gleason's motivation for the burglary, and she did not agree to allow the trial court to review the statement of probable cause as a factual basis for the plea.

After Gleason failed to appear for the sentencing hearing on the September and October 2015 matters, the State charged her with bail jumping under a separate cause number. On June

---

[2] Officers confirmed that the prosecutor had prosecuted Gleason's son before the burglary.

No. 49179-6-II (Consolidated with
49200-8-II and 49208-3-II)

15, 2016, Gleason pleaded guilty to the bail jumping charge and the trial court proceeded to sentence her on all three cause numbers.

## II. SENTENCING

At sentencing, Gleason requested a DOSA sentence under all three cause numbers and requested concurrent sentences for all three sets of charges. In support of her DOSA request, Gleason submitted a DOSA evaluation.

The DOSA evaluation included Collin's assertion that Gleason had committed the burglary as an act of revenge against the Prosecutor for his having prosecuted Gleason's son. It also included the fact that Gleason had stated during the investigation that she had not participated in the burglary. The evaluator also addressed the prosecutor's victim statement and community concerns as follows:

> Attached are statements from the victims of the crime. Gleason stated that she will accept responsibility for the possession charge but stated that she was merely a person of circumstance in the burglary crime. It is hard to believe that it is merely a coincidence that the other person involved in the crime could come up with a story so accurate as to say Gleason wanted retribution for her son's indictment and then just happen to be outside that person's home by chance while it is being burglarized. It is troubling to think that Gleason is willing to target an individual because of the roll [sic] that he plays to keep society safe and hold her son accountable. Gleason's drug possession crime makes her a good candidate for DOSA, but her burglary crime was not done out of the necessity to obtain drugs, rather out of want to exact revenge. I do feel that her criminalistic ways do stem from a lifetime of drug use though. If Gleason cannot get the help and be able to implement the tools that are given to her in order to lead a sober lifestyle, these crimes will most likely continue and community safety will be at risk when she commits these crimes.

CP at 95. Gleason did not expressly object to any of the information in the DOSA evaluation or request a hearing to resolve any disputed factual statements.

3

The State acknowledged that it had agreed to support Gleason's DOSA request if she cooperated with the recovery of some of the stolen property. But the State asserted that Gleason had not fulfilled her obligation. The State requested that the trial court run the bail jumping sentence consecutive to the other sentences.

During Gleason's allocution statement, the trial court asked Gleason why the residential burglary occurred. Gleason asserted she had given a friend a ride and was just waiting for him and that she did not know whose house it was.

The prosecutor, as the victim of the residential burglary, then gave an oral victim impact statement. He stated that

> I had never thought that the sanctuary of my home would be violated simply because I was doing my job. I get the fact I get phone calls in my office on a regular basis, I get faxes, I get e-mails, I get Bar complaints because people aren't happy with the job that I've done. But to come to my home and do it is not only an attack on me, an attack on my entire family, but an attack on the entire system.

Report of Proceedings (RP) (June 15, 2016) at 16. He further stated that Gleason had not taken responsibility for the act and blamed it on someone else and luck, and asserted that she's still not being honest. He concluded by stating, "When she says this was drug related, this wasn't drug related. This was revenge, pure and simple. That shouldn't be rewarded with a DOSA." RP (June 15, 2016) at 17.

The trial court denied Gleason's DOSA request stating,

> I've read the prison DOSA recommendation or evaluation, the risk assessment. I am not inclined to give Ms. Gleason a prison DOSA.
>
> To be quite blunt about it, I don't believe that this is a case that warrants imposition of a prison DOSA. I would be—if we were only talking about the drug charges, that would be one thing. But we're not talking about just the drug charges. We're talking about the other charges.

> In all the years that I've been on the bench as a judge, I've seen an awful lot of residential and, for that matter, commercial burglaries that are burglaries that have come before me. I can't remember, quite frankly, another case where by all indications the burglary was committed as a result of a desire to extract revenge for something that was done by the victim. And that puts this burglary in a whole other category which, quite frankly, I have not seen in all the years that I've been an attorney and a judge. And I think under the circumstances that in and of itself would be sufficient to disqualify.

RP (June 15, 2016) at 18-19.

The trial court further stated,

> Secondly, we have the issue of the request for consecutive sentence with respect to the bail jump. And I'm not inclined to grant somebody a prison DOSA and then turn around and impose a consecutive for bail jump.

> I suppose in this particular instance the [c]ourt has some discretion whether to impose a consecutive or concurrent time with respect to the bail jump because even though the pleas have been taken, the actual sentence have not been completed so it was not like some of the cases where the statute mandates that it be a consecutive sentence by virtue of the fact that the other case is complete. But I think under the circumstances all of the facts here militate [sic] in favor of the [c]ourt granting a consecutive sentence.

RP (June 15, 2016) at 19. The trial court ran the bail jumping sentence consecutive to Gleason's other sentences.

Gleason appeals the consecutive sentences and the denial of her DOSA request.

ANALYSIS

I. CONSECUTIVE SENTENCE

Gleason argues that the trial court erred by running her bail jumping sentence consecutive to her other sentences imposed on the same day. The State concedes that the trial court erred when it ran the sentences consecutively without the imposition of an exceptional sentence. We accept the State's concession.

5

With a few exceptions not applicable here, sentences for two or more current offenses shall be served concurrently and "[c]onsecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535." RCW 9.94A.589(1)(a); *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 508, 301 P.3d 450 (2013). Under RCW 9.94A.535, a trial court may impose an exceptional sentence if "there are substantial and compelling reasons justifying an exceptional sentence." In such a case, the trial court must "set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535.

Our Supreme Court has stated that "[w]hile the [sentencing reform act] does not formally define 'current offense,' the term is defined functionally as convictions entered or sentenced on the same day." *Finstad*, 177 Wn.2d at 507 (citing RCW 9.94A.525(1)). Gleason's offenses fall squarely into this context. Because these offenses were current offenses, the trial court was required to impose concurrent sentences for those convictions unless it followed the exceptional sentence provisions of RCW 9.94A.535. RCW 9.94A.589(1)(a). Under RCW 9.94A.535, the trial court must find "substantial and compelling reasons justifying an exceptional sentence" and "set forth the reasons for its decision in written findings of fact and conclusions of law." The trial court made no such findings here. Thus, the State's concession is well taken.

## II. DOSA ISSUE NOT PRESERVED

Gleason next argues that the trial court violated the real facts doctrine by considering facts not agreed to or proven that were relevant to a more serious offense[3] than Gleason admitted to in

---

[3] Gleason asserts that the allegations were consistent with a charge of intimidating a public servant, RCW 9A.76.180.

the plea agreement. Specifically, Gleason challenges the trial court's reliance on the facts in the DOSA evaluation and the prosecutor's oral victim statement suggesting that the burglary was an act of revenge against the prosecutor. Because Gleason did not raise a timely and specific objection, we decline to address this issue.

The real facts doctrine, RCW 9.94A.530(2), limits the trial court's ability to consider certain information at sentencing. It provides in part:

> In determining any sentence other than a sentence above the standard range, *the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537.* Acknowledgment includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence, except as otherwise specified in RCW 9.94A.537.

RCW 9.94A.530(2) (emphasis added). *See also State v. Reynolds*, 80 Wn. App. 851, 857, 912 P.2d 494 (1996) (the "real facts" doctrine prohibits a sentencing court from relying on more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, in order to depart from the standard range).

But to be entitled to raise a real facts doctrine issue on appeal, Gleason must first show that she raised a "timely and specific" objection to the sentencing court's consideration of the allegedly improper information. *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993); *State v. Grayson*, 154 Wn.2d 333, 338-39, 111 P.3d 1183 (2005); *State v. Watson*, 120 Wn. App. 521, 527, 86 P.3d 158 (2004), *affirmed but criticized on other grounds*, 155 Wn.2d 574 (2005). Gleason fails to make this showing.

Gleason disputed being involved in the burglary or knowing whose home was being burglarized. However, during her allocution, she did not raise any specific objections to the trial court considering the oral victim impact statement or the information in the DOSA evaluation (which she, herself, submitted to the trial court) when the court evaluated her DOSA request. Additionally, Gleason failed to request an evidentiary hearing on this issue.[4] Given Gleason's failure to raise a specific and timely objection, we decline to address this issue further. RAP 2.5(a) (court of appeals may decline to address issues raised for the first time on appeal).

### III. RESENTENCING

Gleason asks that she be resentenced before a different judge. Her argument in support of being resentenced by a different judge, however, focuses on her claim that the trial court violated the real facts doctrine. Because we are not remanding in light of the alleged real facts doctrine violation, there is no need to require resentencing before a different judge.

We affirm the trial court's denial of Gleason's DOSA request. But we accept the State's concession that the trial court erred when it imposed consecutive sentences and remand for resentencing.

---

[4] Gleason relies on *State v. Morreira*, 107 Wn. App. 450, 27 P.3d 639 (2001). Br. of Appellant at 8; Reply at 6. But in *Morreira*, defense counsel "raised a general objection to the trial court considering 'additional 'information.'" 107 Wn. App. at 457. Division Three of this court concluded that this "objection could be fairly interpreted as a challenge to the scope of information the trial court relied upon" at sentencing and that defense counsel in effect "raised an objection directed generally at the real facts doctrine." *Morreira*, 107 Wn. App. at 457-58. Here, in contrast, there was no objection whatsoever. Accordingly, *Morreira* is not instructive.

No. 49179-6-II (Consolidated with
49200-8-II and 49208-3-II)

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

JOHANSON, J.