[No. 10959-3–III.  Division Three.  June 25, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. CECIL E. DYER, *Appellant.*

*William D. Edelblute,* for appellant (appointed counsel for appeal).

*James L. Nagle, Prosecuting Attorney,* and *Sandra L. Johnston, Deputy,* for respondent.

THOMPSON, J.—Cecil E. Dyer appeals her exceptional sentence of 120 months, which the Superior Court imposed following her plea of guilty to the crime of controlled substances homicide, a violation of RCW 69.50.415(a).[1] She contends the sentence, which is the maximum term for this crime, is clearly excessive. We affirm.

The report filed following the presentence investigation indicates Mrs. Dyer was 42 years old at the time of the crime. She frequently babysat Shirley Corona's three daughters, aged 10, 11, and 12. On the evening of December 16, 1989, Ms. Corona took two of the girls to Mrs. Dyer's residence and asked her to watch them because she wanted to go out. Mrs. Dyer said she did not want the girls that night because she was tired, but she reluctantly agreed to

---

[1]RCW 69.50.415(a) provides:

"A person who unlawfully delivers a controlled substance in violation of RCW 69.50.401(a)(1) (i) or (ii) which controlled substance is subsequently used by the person to whom it was delivered, resulting in the death of the user, is guilty of controlled substances homicide."

babysit. Between 5:30 and 6 p.m., she gave the girls some pills to make them sleepy.

At about 3 a.m., Mrs. Dyer was awakened by the 11–year–old's loud snoring. Mr. Dyer also awoke. He was hungry, so Mrs. Dyer brought him some cookies. She then noticed that the 11–year–old had quit snoring and, upon closer observation, saw that she was not breathing. She attempted CPR, then took her to the hospital. The emergency room staff was unable to revive her. An autopsy revealed that the 11–year–old had phenobarbital, methadone, and diazepam in her blood. Urine tests also showed the presence of benzodiazepine metabolic and barbiturates. The cause of death was aspiration pneumonitis as a consequence of administration of the combined medications. A search of the Dyer residence resulted in the seizure of numerous prescription drugs for persons other than Mr. and Mrs. Dyer.

Mrs. Dyer was charged by amended information with controlled substances homicide and three counts of distribution of controlled substances to the younger sister. Mrs. Dyer pleaded guilty in exchange for the prosecutor agreeing to recommend a 36–month sentence and seeking dismissal of the distribution charges. Her standard range sentence would then be 31 to 41 months.

The sentencing court dismissed the distribution charges but rejected the prosecutor's recommendation of a 36–month sentence.[2] In its oral ruling, the court stated:

> I'm finding that an exceptional sentence is warranted in this case, essentially for two primary reasons. One is that the victim was incapable of resistance because of youth and, secondly, because the victim was misled as to what substance was being given to her. She was led to believe it was a helpful substance, vitamins, something that's innocuous at worst, and in fact she was being given a substance which was controlled, could only be obtained by prescription, and more than one of those substances at that, three different controlled substances.

---

[2]The author of the presentence investigation report recommended a high–end standard range sentence of 41 months.

And frankly, controlled–substance homicide, the normal situation in which this is going to occur would be where both the provider and user know what they are doing, know what they are getting, and it turns out bad for the victim, but typically it's a knowing, understanding situation where one person has drugs and they are giving them to another person who wants to use that particular drug, and so that wasn't the case at all in this situation. It was not knowing in any way on the part of the victim as to what she was taking, let alone the risk involved, although it—those kinds of things were known to the defendant here.

And the second aspect of it was she was using her position of trust with this child to facilitate the crime. The child referred to her as Grandma, and she was using that position of trust to give the drugs to the child, to get the child to take them.

And for those reasons, the Court finds that an exceptional sentence is warranted, and the Court finds that ten years is a fair exceptional sentence.

The court's written findings refer to the same factors.

Our review of the trial court's sentence is governed by RCW 9.94A.210(4):

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) *that the sentence imposed was clearly excessive* or clearly too lenient.

(Italics ours.) Mrs. Dyer's argument is concerned with the italicized provision.[3] She contends the sentencing court gave no reason for the *length* of the sentence and did not exercise its discretion when it imposed the maximum term. In support of her argument, Mrs. Dyer relies on *State v. Pryor*, 56 Wn. App. 107, 782 P.2d 1076 (1989), *aff'd on other grounds*, 115 Wn.2d 445, 799 P.2d 244 (1990).

In *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986), the court held that "the sentencing court's decision regarding length of an exceptional sentence should

---

[3]In her pro se brief, Mrs. Dyer generally contends the court erred in sentencing her outside the standard range. She does not make a specific argument in support of her contention. We hold that the reasons relied upon by the sentencing court are supported by the record and justify the exceptional sentence. *See State v. Fisher*, 108 Wn.2d 419, 426, 739 P.2d 683 (1987).

not be reversed as 'clearly excessive' absent an abuse of discretion." *See also State v. McNeil*, 59 Wn. App. 478, 480, 798 P.2d 817 (1990). *Pryor,* 56 Wn. App. at 123, applied the *Oxborrow* standard, but noted "the term of the exceptional sentence must nevertheless have some tenable basis in the record." However, the standard of review of the length of an exceptional sentence continues to be abuse of discretion. *Pryor* simply restated the long–standing definition of abuse of discretion, *i.e.,* was the trial court's conclusion the product of an exercise of discretion that was manifestly unreasonable or based on untenable grounds or reasons? *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *Layne v. Hyde,* 54 Wn. App. 125, 135, 773 P.2d 83, *review denied,* 113 Wn.2d 1016 (1989). The decision in *Pryor* does not purport to change this standard as applied to the review of the *length* of an exceptional sentence. Were we to change the standard, we would be in conflict with the holding in *Oxborrow* and would be substituting our judgment for that of the sentencing court. The Legislature did not intend such a result.

The term of the exceptional sentence in this case does have a tenable basis in the record. Specifically, the reasons given by the court in imposing the exceptional sentence also justify sentencing Mrs. Dyer to the maximum term. This was not an ordinary homicide by controlled substances in which a willing user dies as a result of drugs supplied by a defendant. The situation here is egregious, involving a totally innocent and unsuspecting victim. It is comparable to *Oxborrow,* in which the defendant's first degree theft conviction was based upon a fraud involving more than $1 million and fulfilling *all* the listed criteria for a "major economic offense" under RCW 9.94A.390. *Oxborrow,* at 533. As in *Oxborrow,* "[s]urely this is the quintessential crime for which the Legislature contemplated a maximum sentence". *Oxborrow,* at 533. We find no abuse of discretion.

We emphasize that our holding is not a general invitation to sentencing courts to impose the maximum term whenever an exceptional sentence is justified. Rather, we uphold

Mrs. Dyer's maximum sentence because the record evidences a "worst case" scenario in which the "circumstances of the crime distinguish it from other crimes of *the same statutory category.*" (Italics ours.) *State v. Woody,* 48 Wn. App. 772, 778, 742 P.2d 133 (1987) (citing D. Boerner, *Sentencing in Washington* § 9.6, at 9–13 (1985)), *review denied,* 110 Wn.2d 1006 (1988). The statutory category here is controlled substances homicide; not manslaughter, as the dissent suggests by its citation to sentences for first degree manslaughter.

Likewise, the dissent's reliance on cases such as *State v. Norman,* 61 Wn. App. 16, 808 P.2d 1159 (1991) is misplaced. There, the defendant had refused to seek medical aid for his obviously ill son and beat the child repeatedly until a few hours before the boy's death. He was convicted of first degree manslaughter and received a sentence of 4 years. The dissent asserts that if 4 years for that crime was appropriate, then 10 years for Mrs. Dyer's crime must be inappropriate. What the dissent ignores is the posture of the *Norman* case. The appropriateness of Mr. Norman's sentence was *not* an issue on appeal. In fact, the filed opinion in *Norman* does not indicate the length of Mr. Norman's sentence. Hence, that opinion cannot be read as approving or disapproving the sentence imposed there.

Affirmed.

GREEN, C.J., concurs.

SHIELDS, J. (dissenting)—I respectfully dissent. The court gave as its reasons for the exceptional sentence (1) vulnerability and (2) abuse of a position of trust. The record supports these reasons, and they justify a sentence outside the standard range, which is 31 to 41 months in this case. The court rejected the prosecutor's recommendation of 36 months and the presentence investigator's recommendation of 41 months and imposed the maximum punishment of 10

years. No reasons were given for the length of the exceptional sentence; the sentencing judge stated only "the Court finds that ten years is a fair exceptional sentence."

As the majority points out, the sentencing court's decision regarding length of an exceptional sentence is reviewed for abuse of discretion. *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986); *State v. Armstrong*, 106 Wn.2d 547, 551–52, 723 P.2d 1111 (1986). This court has held, however, some discretion must be used and reasons for imposing the maximum term must be stated: "'[T]he length of an exceptional sentence cannot come out of thin air.'" *State v. Pryor*, 56 Wn. App. 107, 123, 782 P.2d 1076 (1989) (quoting *State v. Wood*, 42 Wn. App. 78, 84, 709 P.2d 1209 (1985), *review denied*, 105 Wn.2d 1010 (1986)), *aff'd*, 115 Wn.2d 445, 799 P.2d 244 (1990).

When we decided *Pryor*, we were troubled by a "possible new trend developing in the trial courts to impose the maximum sentence for an offense once an aggravating circumstance is supported by the record, and the standard range can be set aside." *Pryor*, 56 Wn. App. at 119. The concern in that case related to sex offenses. *Pryor*, 56 Wn. App. at 118–19. The same concern applies to drug offenses.

Reviewing our decision in *Pryor*, the Supreme Court again emphasized that courts should be concerned with the stated purpose of the Sentencing Reform Act of 1981 (SRA) that discretion in sentencing be structured: "The sentence imposed here, over 3.5 times greater than the maximum presumptive sentence, points to the need for sufficient information to allow the sentence to be structured rather than the product solely of judicial discretion." *Pryor*, 115 Wn.2d at 454. Although stated in the context of determining an aggravating factor of future dangerousness, the principle is clearly applicable to determining the structured *length* of an exceptional sentence.

We should not simply put our rubber stamp of approval on any exceptional sentence up to the maximum term. *See Pryor*, 56 Wn. App. at 120. If we do not require articulated

justification for the particular length of an exceptional sentence, we renounce meaningful appellate review. Abandoning our task returns to the trial courts the very discretion the SRA was intended to abolish.

The concurring opinion of Forrest, J., in *State v. Creekmore,* 55 Wn. App. 852, 876–77, 783 P.2d 1068 (1989), *review denied,* 114 Wn.2d 1020 (1990), reflects this same concern:

> The purpose of the SRA was to provide structure to the trial court's exercise of discretion, to promote uniformity in sentencing and, ultimately, to build a common law of sentencing. . . . Under the current policy, once the threshold of an acceptable reason justifying an exceptional sentence is passed, the trial court is permitted "unbridled discretion" as to the duration of the sentence. This is not the purpose of the SRA.

He summarized our duty very well:

> [I]t is the responsibility of the appellate court to decide whether a sentence is "clearly excessive" by exercising its own judgment as to the relationship between the reasons given and the duration imposed; not by reference to what some hypothetical reasonable judge would not do.

*Creekmore,* at 877. Here, we are given no reason ·for the sentence imposed and have no basis for examining the relation between it and the duration of the sentence imposed. Without some explanation of the trial court's reasons for sentencing Mrs. Dyer to 10 years, rather than 5 years or 7 years or any other term, we cannot judge whether the sentence is "fair".

A maximum sentence is to be imposed for only the "worst case" scenario when the "'circumstances of the crime distinguish it from other crimes of the same statutory category.'" *Pryor,* 56 Wn. App. at 119 (quoting *State v. Woody,* 48 Wn. App. 772, 778, 742 P.2d 133 (1987), *review denied,* 110 Wn.2d 1006 (1988)); *see also Armstrong,* at 555 (Goodloe, J., dissenting). Here, Mrs. Dyer would have had to commit the most heinous act of controlled substances homicide imaginable. The majority, at 689 (quoting *Oxborrow,* at 533) compares the circumstances of this case to those in *Oxborrow,* stating: "'[s]urely this is the quintessential crime for which the Legislature contemplated a

maximum sentence'". I disagree; but more importantly, I am concerned that my colleagues are filling the void in the record with their own justification for the sentence imposed.

In exercising its discretion, the trial court must determine whether the offender's conduct truly distinguishes the instant case from all others of the same category. The dissenting opinion of Goodloe, J., in *Armstrong,* at 555–56, effectively describes the court's task:

> Once the trial court has determined that the legislatively imposed maximum sentence does not apply, then the trial court should determine, exercising its sound discretion, how severe the aggravating factors were which justified an exceptional sentence, and the presence of any mitigating factors. Typically, two types of cases will result. There will be cases in which aggravating factors exist which do justify an exceptional sentence, but the crime does not call for a huge disparity between the presumptive range and the actual sentence imposed. Other cases will exist which, because of their outrageous and heinous nature, cry out for a sentence closer to the statutory maximum. No firm rule can exist to distinguish these types of offenses, but the distinction should be based on the nature of the offense committed versus the typical offense contemplated by the particular statute.

*See also State v. Delarosa–Flores,* 59 Wn. App. 514, 520, 799 P.2d 736 (1990), *review denied,* 116 Wn.2d 1010 (1991).

Here, in determining an exceptional sentence was warranted, the trial court found it significant to its determination of vulnerability that the victim did not know she was being given controlled substances, when the usual case of controlled substances homicide involves delivery of a controlled substance to a knowing user whose death results. It is true this is not that ordinary case of controlled substances homicide; however, the majority elevates that factor of vulnerability to a tenable reason for imposing the maximum term. It is the articulated reasoning of the trial court for the length of sentence which is missing.

In this case, Mrs. Dyer gave the pills to the child to make her sleepy, not with any intent to harm her. As soon as she noticed the child had stopped breathing, she tried to resuscitate her. When her efforts were unsuccessful, she took the

child immediately to a hospital emergency room. While such factors are not relevant to an initial determination of guilt in this case, they are relevant to the punishment to be imposed. An appropriate sentence should reflect the uniformity and proportionality which the SRA seeks to inspire.

To put this case in perspective, it is useful to note that Mrs. Dyer's sentence, with an offender score of 0 for this level 9 offense, is placed on a par with the standard range for an offender with an offender score of 8. In *State v. Norman*, 61 Wn. App. 16, 808 P.2d 1159 (1991), a father who refused to seek medical aid for his obviously ill son, and who beat the child repeatedly until a few hours before the boy's death, was convicted of first degree manslaughter, also a level 9 offense, had an offender score of 0, and was given an exceptional sentence of 4 years. That sentence is on a par with the standard range for an offender with an offender score between 1 and 2. Such disparate terms of punishment between that case and this case offend the letter and the spirit of the SRA. Furthermore, such a comparison calls into serious question whether the purpose set forth in RCW 9.94A.010(1), to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the *offender's criminal history*", has been carried out here. (Italics mine.) *See State v. Brown*, 60 Wn. App. 60, 78, 802 P.2d 803 (1990), *review denied*, 116 Wn.2d 1025 (1991). Although the appropriateness of the length of Mr. Norman's sentence was not an issue on appeal, there should be some similarity between exceptional sentences imposed on level 9 offenders with an offender score of 0.

Comparing Mrs. Dyer's sentence with the only two sentences for controlled substances homicide listed in Washington Sentencing Guidelines Comm'n, *A Statistical Summary of Adult Felony Sentencing Fiscal Year 1990* (1991) further emphasizes its disproportionality. Both sentences were above the standard range, *Summary*, at 27, but together they averaged only 67 months, *Summary*, at 3. Interestingly, of the 24 sentences imposed for first degree

manslaughter during fiscal year 1990, only 4 were outside the standard range, *Summary,* at 29, and the average sentence for that offense was 55.8 months, *Summary,* at 5. Similarly, of the 198 sentences imposed for first degree robbery, also a level 9 offense, only 17 were outside the standard range (4 were above, 13 were below), *Summary,* at 30, and the average length of the 123 sentences not involving attempts or weapon usage was 57.4 months, *Summary,* at 8. While statistics cannot and should not replace reasoned application of the underlying principles of the SRA, they highlight just how far Mrs. Dyer's sentence falls short of the goal of punishment commensurate with that imposed on others committing similar offenses. *See* RCW 9.94A-.010(3).

Just as in *Pryor,* "[i]t is difficult to determine from this record any reason for the sentencing court imposing the maximum term. In the absence of reasons, the present record gives the appearance the trial court failed to exercise any discretion at all." *Pryor,* 56 Wn. App. at 123. The length of the exceptional sentence imposed was unjustified by any articulated reason and is thereby clearly excessive. I would remand for resentencing, consistent with the legislative policy of the SRA.