[No. 25951-2-I.   Division One.   October 25, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID TODD ROSS, *Appellant.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association; Robert M. Leen,* for appellant.

*Norm Maleng, Prosecuting Attorney, Theresa Fricke, Senior Prosecuting Attorney,* and *Michele Shaw* and *Jeffrey B. Baird, Deputies,* for respondent.

GROSSE, J. — David Todd Ross appeals the trial court's determination that substantial and compelling reasons existed to exceed the standard sentencing range on his convictions of two counts of first degree robbery while armed with a deadly weapon and one count of second degree murder. We affirm.

Initially the State charged Ross with eight crimes. Counts 1, 2, and 3 alleged two counts of first degree robbery and one of indecent liberties in the robberies of Charlotte Yeary and Rebecca Crichton. Count 4 charged first degree murder for the

death of Serena Willers. Count 5 was a charge of first degree robbery of Yulpha Cole, and count 6 alleged first degree robbery of Laura Kelsey. Counts 7 and 8 were allegations of first degree rape and first degree robbery of Sandra Jackson. Ross entered an *Alford*[1] plea to a reduced charge of murder in the second degree (count 4) and two counts of robbery in the first degree (counts 2 and 8). The remaining counts were to be dismissed at sentencing. When Ross pleaded, he agreed in writing that the State would be entitled to recommend a sentence outside the standard range and that the State could introduce testimony of all the victims of the originally charged crimes to support an exceptional sentence.

Based on Ross' offender score, the standard range for each of the robberies was 111 to 140 months. The standard range for the murder was 216 to 288 months. At the sentencing hearing the State requested an exceptional sentence of 720 months on the murder conviction. The State based this request on numerous aggravating factors: deliberate cruelty; that the robberies took place over protracted periods of time; the crimes were exploitive and marked by gratuitous infliction of psychological and emotional pain; the murder was vicious, violent and bordered on torture; the victims were particularly vulnerable; the victims' zones of privacy had been invaded; the crimes were an escalation of violence; Ross presented an extraordinary danger to society, particularly to women; and that Ross showed no remorse for his crimes.

At the sentencing hearing the court heard the testimony of the medical examiner who performed the autopsy on Serena Willers, her family and friends, the victims of the robberies, including victims of the crimes for which charges were to be dismissed, two detectives involved in the investigation of the crimes, a community corrections officer who had been assigned to supervise Ross on his previous probation periods, and Ms. Ramsey, the community corrections

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

officer who prepared a presentence investigation report for sentencing on these crimes. Ramsey recommended a sentence of 960 months on the murder to insure, as she said, that Ross would not be released until he was in his eighties. Ross also testified on his own behalf.

Following the hearing and argument of counsel, the court found beyond any doubt that there were a substantial number of aggravating circumstances. The court then indicated that it had referred to the life expectancy tables and found the defendant had a life expectancy of 73 years. The judge said he was convinced that if Ross were at large again, he would have the same compulsion and continue to commit similar crimes. The court imposed a sentence of 840 months, or 70 years, with the likely possibility of good time credit reducing the sentence to 46.69 years.

At a subsequent hearing on findings and conclusions, the trial judge stated that his decision was a "two track proposition": One track was a sentence based on Ross' life expectancy, making sure he would not be released from prison until he was old and harmless. The "other track" was simply that "there is enough viciousness in this case and enough persistence of it in these particular crimes to justify all of the time that is involved regardless of the defendant's age."

A sentencing court may impose a sentence outside the standard range if it finds there are "substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A-.120(2). Under the Sentencing Reform Act of 1981 (SRA) an exceptional sentence is subject to appellate review pursuant to RCW 9.94A.210(4), which provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

Review under subsection (a) involves a 2-part analysis. First, this court must determine whether the trial court's

reasons for imposing an exceptional sentence are supported by the record. This is a factual inquiry to which we apply a clearly erroneous standard of review. *State v. Post*, 118 Wn.2d 596, 614, 826 P.2d 172, 837 P.2d 599 (1992). *See also State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990). Second, we independently determine whether, as a matter of law, the sentencing judge's reasons justify imposition of a sentence outside the presumptive range. *Post*, 118 Wn.2d at 614. Finally, under subsection (b), we decide whether the trial court abused its discretion by imposing a sentence that is clearly excessive. *State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991).

I

GROUNDS FOR EXCEPTIONAL SENTENCE

A. Deliberate Cruelty. Ross contends that, as a matter of law, the trial court erred in finding deliberate cruelty in the stabbing death of Ms. Willers. Deliberate cruelty under the SRA means " 'gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself '." *State v. Kidd*, 57 Wn. App. 95, 106, 786 P.2d 847 (quoting *State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989)), *review denied*, 115 Wn.2d 1010 (1990). Ross contends there was no evidence that the murder was gratuitously cruel. He claims the only witness who testified on a comparative basis about evidence of cruelty was the medical examiner, who stated that there was nothing unusual about the stab wounds, nor was the number unusual or unique. However, Ross ignores the medical examiner's testimony regarding the extraordinarily high number of wounds, cuts and marks, a number which exceeded 100. Nor does Ross acknowledge the detective's testimony about the evidence of a protracted struggle and the two dozen or more stab marks in the walls where Ross missed his victim while attempting to stab her. In *State v. Harmon*, 50 Wn. App. 755, 761, 750 P.2d 664, *review denied*, 110 Wn.2d 1033 (1988), the court concluded that inflicting 64 stab wounds "was a violent, vicious act of deliberate cruelty." Here the same is true.

■ Ross also contends that all murders are inherently cruel and that a finding of cruelty cannot justify the imposition of an exceptional sentence. This claim was rejected in *State v. Drummer*, 54 Wn. App. 751, 759, 775 P.2d 981 (1989). In *State v. Campas*, 59 Wn. App. 561, 799 P.2d 744 (1990), the court found that repeated bludgeoning and stabbing was sufficient for a finding of deliberate cruelty. We see no difference between those cases and this one. The court properly relied on deliberate cruelty in enhancing Ross' sentence for a vicious murder.

■ B. Lack of Remorse. A defendant's lack of remorse may also be a sufficient aggravating factor to justify an exceptional sentence. *State v. Stuhr*, 58 Wn. App. 660, 664, 794 P.2d 1297 (1990), *review denied*, 116 Wn.2d 1005 (1991); *State v. Creekmore*, 55 Wn. App. 852, 860-62, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990); *State v. Ratliff*, 46 Wn. App. 466, 470, 731 P.2d 1114 (1987). However, the lack of remorse must be of an aggravated or egregious nature. *State v. Wood*, 57 Wn. App. 792, 800, 790 P.2d 220, *review denied*, 115 Wn.2d 1015 (1990). Ross contends that, because he testified he was sorry for Willers' death, this factor cannot apply to the murder charge. He also argues that, having denied guilt in the robberies of Yeary and Jackson in his *Alford* plea, no remorse is necessary because a lack of remorse is not required for crimes a person did not commit.

Whether a sufficient quantity or quality of remorse is present in any case depends on the facts. *Wood*, 57 Wn. App. at 800. Here, although Ross testified that he regretted killing Willers, his own testimony and that of the community correction officer, Ms. Ramsey, show an extreme lack of remorse for his crimes. He continues to blame the justice system for his crimes as shown by his comment that if he had not been caught after perpetrating his first robbery so many years ago, he would have enlisted in the Army and not been here to kill Willers. The trial court did not believe Ross when he said he was sorry, other than he was sorry he had been

caught. Credibility determinations are for the trial court. *Krause v. Catholic Comm'ty Servs.*, 47 Wn. App. 734, 747, 737 P.2d 280, *review denied*, 108 Wn.2d 1035 (1987). This factor was proven sufficiently to support an exceptional sentence.

C. Sophisticated Planning, Deliberate and Cold. Ross agrees that sophistication and planning are sufficient to support an exceptional sentence, but only if they are of a kind not normally associated with the commission of the offenses in question. *State v. Dunaway*, 109 Wn.2d 207, 218-19, 743 P.2d 1237, 749 P.2d 160 (1987); *Wood*, 57 Wn. App. at 801. Ross then claims there was nothing here to suggest that the murder and robberies were anymore sophisticated than usual.

■■ Generally, a reason offered to justify an exceptional sentence can be considered only if it takes into account "factors other than those which are necessarily considered in computing the presumptive range for the offense." *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986).

The planning and sophistication the court considered included the facts that Ross studied each victim in her office before the crime and that the attacks happened only after he was assured the victim was alone. Further, that Ross gained entry by using a ruse of needing help, an appointment, or to use the phone is different from the usual intent required for second degree murder or robbery. Planning a criminal act in a manner both qualitatively and quantitatively in excess of that necessary to meet the elements inherent in the crime is a factor which may be considered in justifying an exceptional sentence. *Wood*, 57 Wn. App. at 801. Additionally, sophistication in that planning beyond what is necessary to commit the crime also supports an exceptional sentence. *Wood*, 57 Wn. App. at 801. Here, at least as to the robberies, the crimes were even premeditated. *See State v. Brooks*, 97 Wn.2d 873, 876, 651 P.2d 217 (1982) (premeditation encompasses the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time). The sophistication and planning of these crimes support an exceptional sentence. Ross had over 100 business cards of

women whose businesses he had entered. He was careful to inquire and observe whether and when the potential victim would be alone, and each time he employed a ruse to gain entry and attack the victim. These carefully thought out plans satisfy the legal requirements for this statutory aggravating factor.

D. <u>Vulnerability of the Victims</u>. The vulnerability of a victim is also a statutory aggravating factor which will support an exceptional sentence. The defendant must know of the victim's particular vulnerability and the vulnerability must be a substantial factor in accomplishing the crime. *State v. Vermillion*, 66 Wn. App. 332, 348, 832 P.2d 95 (1992), *review denied*, 120 Wn.2d 1030 (1993); *State v. Jackmon*, 55 Wn. App. 562, 567, 778 P.2d 1079 (1989).

RCW 9.94A.390(2)(b) provides that the defendant must know the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health. The critical inquiry regarding victim vulnerability focuses on

> whether or not the victim was *more vulnerable to the offense than other victims* due to extreme youth, advanced age, disability, or ill health and whether the defendant knew of that vulnerability. Accordingly, the mens rea element of the crime with which the defendant is charged has no relevance; instead, what is critical is whether the defendant knew or should have known of the victim's vulnerability, and whether the particular vulnerability was a substantial factor in accomplishment of the crime.

(Citation omitted. Italics ours.) *State v. Jones*, 59 Wn. App. 744, 753, 801 P.2d 263 (1990), *review denied*, 116 Wn.2d 1021 (1991). Most of the cases dealing with vulnerability have involved youth, advanced age or disability, caregivers, family relationships, or sleeping victims. Here, the defendant chose the victims precisely because they were, of necessity, vulnerable. The women were alone in offices open to the public because the nature of their work required them to be. Vulnerability can be the result of characteristics other than the victim's physical condition or stature. *See, e.g., State v. Nguyen*, 68 Wn. App. 906, 847 P.2d 936 (1993). Under the circumstances of this case, where Ross selected the victims

because they were vulnerable to his attacks, the trial court properly relied on this factor.

E. Zone of Privacy. The trial court's reliance on Ross' invasion of the victims' zones of privacy is not, standing alone, sufficient to support an exceptional sentence. Rather, as we explained in the prior section, this factor is subsumed under and is a part of the planning and sophistication of the crimes. No case has gone so far as to characterize a public place of business as a zone of privacy, and we see no basis for doing so here. This factor by itself does not justify an exceptional sentence.

F. Escalation of Violence. Ross argues there was no evidence presented about his prior crimes. Thus, he claims the court erroneously concluded that the crimes committed here established an escalation in the violent nature of his crimes. Ross is partially correct. His first probation officer testified that he supervised Ross while on parole for a burglary and that Ross committed other crimes while on parole. There was evidence presented that Ross disposed of the knife he used in Willers' death, but that he immediately replaced it and also bought a stun gun and a crowbar. However, the State has provided no citation to authority regarding "escalation of violence" as an aggravating factor. Further, the record on appeal omits critical facts about the former crimes. This court is therefore unable to assess the factual or legal grounds for basing the exceptional sentence on escalation of violence. *See State v. Chadderton*, 119 Wn.2d 390, 399, 832 P.2d 481 (1992).

■ G. Future Dangerousness/Lack of Amenability to Treatment and the Extraordinary Danger the Defendant Presents to Women. These findings are tantamount to a finding of future dangerousness. In *State v. Pryor*, 115 Wn.2d 445, 454, 799 P.2d 244 (1990), the Supreme Court held that an exceptional sentence may be justified upon a finding of future dangerousness only if it is supported by a history of similar criminal acts and lack of amenability to treatment. The State concedes that the finding is not supported by the record because there was no testimony from a qualified mental health professional as mandated by *Pryor*, 115 Wn.2d at 454. In *State v.*

*Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991), the court further restricted future dangerousness to cases involving sexual offenses. Here, although there were alleged sexual elements of crimes involved, the State either did not prove them or dismissed the charges. Thus, the record does not support a finding of future dangerousness after *Pryor* and *Barnes*.

## II
### NEED FOR REMAND

█ We must also decide whether a remand for resentencing is necessary.

> Generally, [a remand to the trial court for resentencing] is necessary when the trial court places significant weight on an inappropriate factor, or where some factors are inappropriate and the exceptional sentence significantly deviates from the standard range.

*Pryor*, 115 Wn.2d at 456; *see also Dunaway*, 109 Wn.2d at 219-20. A remand is not mandated when the reviewing court is confident that the trial court would impose the same sentence when it considers only valid reasons. *Pryor*, 115 Wn.2d at 456; *State v. Fisher*, 108 Wn.2d 419, 430 n.7, 739 P.2d 683 (1987).

█ Here, the trial court did, as Ross argues, place great weight on the defendant's predatory behavior and danger to women if he were released in his lifetime. However, a review of the trial court's oral opinion indicates that it relied on the defendant's dangerousness and the corollary need to protect the public from him[2] primarily in determining the length of the sentence rather than in deciding whether to impose an exceptional sentence in the first place. The court based its decision to impose an exceptional sentence on victim vulnerability, the elaborate planning of the crimes, deliberate cruelty both in committing the murder and in the "form of torture" the defendant used to complete the robberies, and the lack of

---

[2]*See State v. Post*, 118 Wn.2d 596, 616, 826 P.2d 172, 837 P.2d 599 (1992), holding that protection of the public is "encompassed by the future dangerousness factor" when the trial court properly finds under *Pryor* and *Barnes* that the defendant is likely to reoffend and is not amenable to treatment. *Accord, State v. Strauss*, 54 Wn. App. 408, 422-23, 773 P.2d 898 (1989).

remorse he showed for the murder. After reviewing each of these aggravating circumstances, the trial court next reached "the question of what is an appropriate sentence and how does one reason this out." It was only during his explication of how he set the length of the sentence that the judge spoke of the defendant's predatory behavior and "whether this man should ever be at large again" in view of his threat to women. Under these circumstances, it is clear that the trial court did not place significant reliance on an impermissible factor to conclude that an exceptional sentence should be imposed.

We have previously held that, while a court may not rely on an impermissible factor such as future dangerousness to impose an exceptional sentence, it is not precluded from using such considerations in deciding how long the sentence should be.

> We note factors that may not in themselves be sufficient to justify the imposition of an exceptional sentence may be considered by the sentencing judge in determining the length of the sentence, provided those reasons are related to the defendant's culpability.

*State v. George*, 67 Wn. App. 217, 227, 834 P.2d 664 (1992), *review denied*, 120 Wn.2d 1023 (1993). *Accord, State v. Hillman*, 66 Wn. App. 770, 777-78, 832 P.2d 1369, *review denied*, 120 Wn.2d 1011 (1992). Here, the trial court was justified in considering Ross' predatory behavior toward women and his continuing pattern of attacking them in carefully chosen isolated circumstances to determine how long the sentence would be. Because the court did not base its decision to impose an exceptional sentence on future dangerousness and we have upheld four of the six reasons on which it did rely, a remand for resentencing on this basis is unnecessary.

### III
#### LENGTH OF SENTENCE IMPOSED

■ Ross contends the sentence given was clearly excessive. Once the sentencing court finds substantial and compelling reasons for imposing an exceptional sentence, the court is permitted to use its discretion to determine the precise length of that sentence. A sentence is clearly exces-

sive if it is imposed on untenable grounds or for untenable reasons or is manifestly unreasonable. *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986); *State v. Brown*, 60 Wn. App. 60, 77, 802 P.2d 803 (1990), *review denied*, 116 Wn.2d 1025 (1991). The length of an exceptional sentence is reviewed under an abuse of discretion standard. *Oxborrow*, 106 Wn.2d at 530. In other words, the reviewing court asks whether the grounds relied on, if any, in determining the length of the sentence are tenable and whether the amount of incarceration imposed is such that "no reasonable person" would have imposed it. *State v. Harmon*, 50 Wn. App. 755, 762, 750 P.2d 664, *review denied*, 110 Wn.2d 1033 (1988).[3]

The abuse of discretion standard has presented jurisprudential problems in reviewing the length of exceptional sentences above the standard range which we believe should be acknowledged and resolved. Since the Supreme Court re-

---

[3]We note that a different analysis has been applied to challenges to the length of exceptional sentences below the standard range. The cases have not posed the question in terms of whether the trial court's decision is an abuse of discretion but rather whether the sentence imposed violates the proportionality requirement of the SRA. RCW 9.94A.010. *See, e.g., State v. Estrella*, 115 Wn.2d 350, 359-60, 798 P.2d 289 (1990) (sentence of 1 year of confinement and 1 year of work release for defendant with offender score of 14 and standard range of 43 to 57 months reversed); *State v. Laik*, 62 Wn. App. 734, 737-38, 815 P.2d 822 (1991) (18 months in an inpatient drug treatment program and no incarceration for defendant with standard range of 31 to 41 months reversed), *review denied*, 118 Wn.2d 1011 (1992); *State v. Harper*, 62 Wn. App. 69, 76-78, 813 P.2d 593 (1991) (188 days in jail for defendant with standard range of 43 to 57 months reversed), *review denied*, 118 Wn.2d 1017 (1992). *Cf. State v. Gaines*, 122 Wn.2d 502, 513-14, 859 P.2d 36 (1993) (comparison of length of standard range and exceptional sentence below the range appropriate in considering whether exceptional sentence is clearly too lenient).

Such a proportionality analysis is virtually impossible in the context of an exceptional sentence above the standard range because, unlike a sentence below the range, there is no range to which the trial court or a reviewing court can compare the sentence actually imposed. Defense counsel's suggestion that the courts use statistical compilations of the *average* sentence above the range for the crime in question ignores the very real differences in the facts of each case. *State v. Creekmore*, 55 Wn. App. 852, 867-68, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990). It is precisely those factual differences on which trial judges are to base their determination of the appropriate length of an exceptional sentence. "[T]he sentencing court must be permitted to tailor the sentence to the facts of each particular case." *Oxborrow*, 106 Wn.2d at 530.

jected the Minnesota "doubling rule" in *Oxborrow*, 106 Wn.2d at 531-32, we are aware of only one exceptional sentence that has been reversed solely on the ground of excessive length. *State v. Elsberry*, 69 Wn. App. 793, 850 P.2d 590 (1993). The courts in *State v. Brown, supra*, and *State v. Pryor*, 56 Wn. App. 107, 782 P.2d 1076 (1989), *aff'd on other grounds*, 115 Wn.2d 445, 799 P.2d 244 (1990), held that sentences were excessive, but only after invalidating most of the reasons given by the trial court for imposing an exceptional sentence in the first place. Only *Elsberry*, 69 Wn. App. at 797, and the Court of Appeals opinion in *Pryor*, 56 Wn. App. at 123, require that the sentencing court state a reason independent of those relied on for imposing an exceptional sentence to support the length of that sentence.[4] In all of the other cases in which a defendant has appealed the length of the sentence and the appellate court has remanded for resentencing, the reviewing court has relied on one or both of the following grounds for doing so: the trial court has based the decision to impose an exceptional sentence on one or more impermissible grounds,[5] and/or the trial court has

---

[4] In both *Elsberry* and *Pryor*, one member of the Division Three panel dissented on this issue, and in *State v. Dyer*, 61 Wn. App. 685, 811 P.2d 975, *review denied*, 117 Wn.2d 1029 (1991), a split decision in Division Three held that *Pryor* did not purport to change the *Oxborrow* abuse of discretion standard. 61 Wn. App. at 689. In addition, three Court of Appeals cases have used the phrase " ' "[t]he length of an exceptional sentence cannot come out of thin air" ' ", in the course of reviewing the length of a sentence above the standard range. *George*, 67 Wn. App. at 227 (quoting *Pryor*, 56 Wn. App. at 123 (quoting *State v. Wood*, 42 Wn. App. 78, 84, 709 P.2d 1209 (1985), *review denied*, 105 Wn.2d 1010 (1986))). The *George* opinion cited *Pryor* as authority. The *Pryor* opinion relied on the statement in *Wood* which, in turn, cited as authority for that proposition *State v. P*, 37 Wn. App. 773, 686 P.2d 488 (1984). However, the opinion in *State v. P, supra* does not mention "thin air". Rather, it recites the usual manifest abuse of discretion standard, *i.e.*, " 'a sentence is excessive only when it cannot be justified by any reasonable view which may be taken of the record.' " *State v. P*, 37 Wn. App. at 779 (quoting *State v. Strong*, 23 Wn. App. 789, 795, 599 P.2d 20 (1979)). Thus, we conclude that this proposition, together with its implication that *some* reason must be given to support the number of months chosen by the trial court for an exceptional sentence above the range, is not actually supported by our cases.

[5] *See, e.g., Barnes*, 117 Wn.2d at 712-13 (future dangerousness); *State v. Dunaway*, 109 Wn.2d 207, 219-20, 743 P.2d 1237, 749 P.2d 160 (1987) (planning and

affirmatively stated an improper basis for the length of the sentence.[6]

As the Supreme Court recently reiterated in *State v. Batista*, 116 Wn.2d 777, 793, 808 P.2d 1141 (1991), the question to be asked about the length of a particular sentence after the imposition of an exceptional sentence has been justified is "whether the sentence imposed was one which no reasonable person would impose." This statement incorporates one-half of the definition of the abuse of discretion standard under which we are to review the length of exceptional sentences above the range:

> Action is excessive if it "goes beyond the usual, reasonable, or lawful limit." Thus, for action to be *clearly* excessive, it must be shown to be clearly unreasonable, *i.e.*, exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken.

*Oxborrow*, 106 Wn.2d at 531 (quoting *State v. Strong*, 23 Wn. App. 789, 794, 599 P.2d 20 (1979)).

A careful examination of each of the words used to explain the abuse of discretion standard demonstrates why the pattern in the vast majority of cases cited above has developed. In order to abuse its discretion in determining the length of an exceptional sentence above the standard range, the trial court must do one of two things: rely on an impermissible reason (the "untenable grounds/untenable reasons" prong of the standard) or impose a sentence which is so long that, in light of the record, it shocks the conscience of the reviewing court (the "no reasonable person" prong of the standard). Indeed, once a reviewing court has determined that the facts support the reasons given for exceeding the range and that

---

sophistication); *State v. Smith*, 67 Wn. App. 81, 92, 834 P.2d 26 (1992) (multiple victims and recidivism), *review granted*, 120 Wn.2d 1018 (1993).

[6]*See, e.g., State v. Batista*, 116 Wn.2d 777, 808 P.2d 1141 (1991) (improper reliance on statutory aggravating factor); *Fisher* (improper reliance on earned early release but remand not necessary); *State v. Gutierrez*, 58 Wn. App. 70, 791 P.2d 275 (1990) (improper reliance on earned early release and length of standard range); *State v. Crutchfield*, 53 Wn. App. 916, 771 P.2d 746 (1989) (reliance on earned early release).

those reasons are substantial and compelling, there is often nothing more to say. The trial and appellate courts simply reiterate those reasons to explain why a particular number of months is appropriate. This is what our courts refer to when they recite that the length of the sentence must have "some basis in the record". *See, e.g., Brown*, 60 Wn. App. at 77; *State v. Sanchez*, 69 Wn. App. 195, 208, 848 P.2d 735, *review denied*, 121 Wn.2d 1031 (1993).[7]

The Sentencing Guidelines Commission and our courts have recognized that the Legislature chose to severely limit review of the length of exceptional sentences. "[A]ny sentence outside the standard range shall be subject to review *only* for abuse of discretion. . . . Washington Sentencing Guidelines Comm'n, *Report to the Legislature* 51 (Jan. 1983)." (Italics omitted.) *Oxborrow*, 106 Wn.2d at 530-31.[8] In our view, *State v. Creekmore*, 55 Wn. App. 852, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990) correctly analyzed the impact of the abuse of discretion standard in these cases.

> Stated otherwise, the "clearly excessive" prong of appellate review under the sentencing reform act gives courts near plenary discretion *to affirm* the length of an exceptional sentence, just as the trial court has all but unbridled discretion in setting the length of the sentence. This necessarily follows from the lack of a legislative definition of "clearly excessive" and from the abuse-of-discretion standard of review. *See* RCW 9.94A-.210(4)(b); *State v. Oxborrow*, 106 Wn.2d 525, 529-30, 723 P.2d 1123 (1986).

---

[7] Implicit in the cases remanding for resentencing when a number of the grounds for imposing an exceptional sentence have been invalidated is the recognition that the length of the sentence is in fact dependent on the bases on which the trial court relied for going outside the standard range in the first place. *See, e.g., Pryor*, 115 Wn.2d at 456; *Dunaway*, 109 Wn.2d at 219-20. This is because the reviewing court cannot determine whether, without one or more of the reasons for exceeding the range, the trial court would impose a sentence of the same *length* when there is a significant difference between the standard range and the sentence imposed.

[8] While we recognize the bases for the dissatisfaction with such an open-ended rule expressed by counsel for criminal defendants in this and other exceptional sentence cases, in view of the statutory language and the body of case law that has developed since *Oxborrow*, this concern should be addressed not to the courts but to the Legislature.

55 Wn. App. at 864. We hold that the sentencing court need not state reasons in addition to those relied upon to justify the imposition of an exceptional sentence above the standard range in the first instance to justify the length of the sentence imposed.[9]

In this case, the maximum term allowed for second degree murder is life. RCW 9A.32.050(2); RCW 9A.20.020(1)(a). The trial court used the actuarial tables from the Washington Pattern Jury Instructions (WPI) to set a potential release date for Ross at a time when he would be approaching the end of his life. In addition, the court considered Ross' potential earned early release credit for good behavior in prison and increased the length of the sentence accordingly.

Taking good time into account when setting the length of a sentence is improper. *Fisher*, 108 Wn.2d at 429 n.6. Under the SRA, earned early release time may be considered only after the offender has begun serving his sentence. *See* RCW 9.94A.150(1). Moreover, it would be inappropriate to impose a sentence outside the standard range based on an entirely speculative prediction of the likely behavior of an offender while in confinement. *Fisher*, 108 Wn.2d at 429.

However, there is nothing improper about using the actuarial tables relied on by the superior courts for other purposes in determining what the length of a life sentence should be. Under the SRA, all sentences except life in prison without the possibility of parole must be determinate. RCW 9.94A.120(1) and (3). Thus, the only way to impose a life sentence for the myriad crimes for which life is the maximum penalty is to determine what the defendant's life expectancy is likely to be. The WPI actuarial tables[10] are routinely used to instruct juries charged with determining parties' life

---

[9] This is not to say, of course, that the trial court may rely on impermissible reasons such as the availability of good time or a general dissatisfaction with the applicable standard range sentence to determine the length of a sentence.

[10] These tables appear at appendix B of 6 Wash. Prac., *WPI* 704 (3d ed. 1989). They are developed by the State Insurance Commissioner pursuant to RCW 48.02.160 and are the only life expectancy tables our courts can use in instructing juries. *Bradshaw v. Seattle*, 43 Wn.2d 766, 784, 264 P.2d 265 (1953).

expectancies as a component of a damages award. *Wolff v. Coast Engine Prods., Inc.*, 72 Wn.2d 226, 229, 432 P.2d 562 (1967). As they have long been accepted by the courts for that purpose, we can see no reason why they should not be viewed as a reliable basis for determining how long a life sentence in a criminal case should be.[11] Unless the Legislature determines that life sentences are no longer available under the determinate sentencing scheme, use of the WPI life expectancy tables is a reasonable method of translating that indeterminate term into one that satisfies the determinate sentence requirement of the SRA.

Having concluded that the trial court relied upon four proper and two improper grounds to impose the exceptional sentence, that it relied on Ross' dangerousness and the need to protect women only in setting the length of the sentence but that it improperly considered good time in imposing a sentence that was almost three times the top of the standard range, we must now decide whether this combination of circumstances requires a remand. In so doing, we are aware that

> [t]he Washington Supreme Court has admonished that "[t]he maximum sentence is to be imposed for only the 'worst case' scenario when the 'circumstances of the crime distinguish it from other crimes of the same statutory category.'" *State v. Pryor*, 56 Wn. App. at 119 (quoting *State v. Woody*, 48 Wn. App. 772, 778, 742 P.2d 133 (1987), *review denied*, 110 Wn.2d 1006 (1988)); *State v. Armstrong*, 106 Wn.2d 547, 555, 723 P.2d 1111 (1986) [(Goodloe, J., dissenting)].

*State v. George*, 67 Wn. App. 217, 227, 834 P.2d 664 (1992), *review denied*, 120 Wn.2d 1023 (1993). *See also State v. Delarosa-Flores*, 59 Wn. App. 514, 520, 799 P.2d 736 (1990), *review denied*, 116 Wn.2d 1010 (1991).

---

[11]Indeed, critics of the abuse of discretion standard of review should welcome the use of an objective method of determining the length of an exceptional sentence. At a minimum, it provides a benchmark for setting the length of a sentence, an objective criterion against which defense counsel can argue, rather than forcing counsel to refute the trial court's subjective evaluation of what the sentence should be.

In the statutory categories of second degree murder and first degree robbery while armed with a deadly weapon, we agree with the trial court that the facts before us present a worst case scenario. Four of the established aggravating factors — deliberate cruelty, lack of remorse, sophistication and planning and victim vulnerability — were present here. In addition, the trial court recognized that Ross' culpability was increased by the predatory nature of his crimes and the threat he continued to pose to professional women working alone. It concluded, based on these considerations, that a determinate approximation of a life sentence was appropriate. These were adequate grounds for the length of the sentence it imposed. As in *Fisher*, we do not think that the trial court's improper consideration of the availability to Ross of good time credit is a sufficient basis for a remand. 108 Wn.2d 419, 429 & n.6. The length of the sentence is not unreasonable. It does not shock the conscience of the reviewing court. The court's reliance on some improper reasons is overwhelmed by the multiplicity of sound, supportable grounds for imposing an exceptional sentence of 70 years.

The trial court is affirmed.

KENNEDY and AGID, JJ., concur.

Review denied at 123 Wn.2d 1019 (1994).