# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) ) | No. 71961-1-I |
| v. | ) ) | UNPUBLISHED OPINION |
| SEAN MICHAEL KLAMN, | ) ) | |
| Appellant. | ) ) | FILED: July 21, 2014 |

DWYER, J. — Sean Klamn was convicted of 14 offenses for sexually abusing his daughter over a seven-year period. Klamn contends that the trial court erred by not timely entering written findings of fact and conclusions of law and that his sentence of incarceration for 600 months is excessive. In his statement of additional grounds, Klamn further contends that the trial court erred by admitting evidence of a telephone call between him and his daughter and that his convictions are not supported by sufficient evidence. Finding no error, we affirm.

I

S.A.K. is Klamn's biological daughter. S.A.K. began to spend every weekend with Klamn when she was four years old. When S.A.K. was seven years old, Klamn began touching her vagina with his hands and fingers. Klamn touched S.A.K. in this manner every night that she spent with him, and occasionally during the day as well.

The following year, Klamn started having vaginal intercourse with S.A.K.

According to S.A.K., Klamn "would grab my hands and hold them above my head and hold me down and straddle me," resulting in bruising on S.A.K.'s legs and wrists. Klamn never used a condom while having intercourse with S.A.K. Around that same time, Klamn began putting his mouth on S.A.K.'s vagina. Klamn also would grab S.A.K.'s hands and hold them in a "grip over his penis."

Klamn engaged in sexual behavior with S.A.K. every weekend that S.A.K. spent at his residence. S.A.K. did not have her own room at any of Klamn's residences, and often slept in the same bed with Klamn.[1] The only weekends that a sexual encounter did not occur were when Klamn's girlfriend spent the night with him, when S.A.K. was nine years old. After Klamn's year-old relationship ended, he resumed having sexual intercourse with S.A.K. every weekend.

S.A.K. first got her period when she was twelve. Klamn continued to have intercourse with her without using a condom. S.A.K. was concerned that she might get pregnant, but Klamn never exhibited any such concern. Klamn, in fact, continued to touch S.A.K.'s vagina or have intercourse with her every weekend.

The last time that Klamn had a sexual encounter with S.A.K. was December 10, 2011, roughly three months prior to S.A.K.'s fourteenth birthday. That evening, S.A.K. was staying with a friend so that they could watch the lunar eclipse together. S.A.K. returned to Klamn's residence after he sent her a text message. S.A.K. climbed into the top bunk bed and moved as close to the wall

---

[1] Klamn lived at the residences of various other people until S.A.K. was thirteen. At no point did Klamn reside outside of the state of Washington.

as possible. According to S.A.K., Klamn then stood on the bottom bunk bed, "grabbed me by my legs and pulled me to the other edge towards him, and he pulled down my pants and put his mouth on my vagina." S.A.K. stated that "he did that for what felt like an hour." S.A.K. attempted to get away, but Klamn held her down by a tight grip on her legs. After this incident, S.A.K. continued to go to Klamn's residence after school, but no longer stayed overnight there.

In January or February of 2012, S.A.K. told a friend from school about Klamn's actions. The friend encouraged S.A.K. to report her allegations. In March 2012, S.A.K. reported Klamn's behavior to family friends Joshua and Jackie Rees. After then informing her mother, S.A.K. reported Klamn to the Chehalis Police Department.

With her mother, her advocate, and Detective Rick Silva all present, S.A.K. called Klamn from the Chehalis police station. Klamn answered, and S.A.K. confronted him about sexually abusing her. During the conversation, Klamn repeatedly told S.A.K. that he was sorry, but never denied any of S.A.K.'s allegations. Detective Silva recorded the conversation. However, the recording equipment captured only S.A.K.'s voice.

S.A.K. returned to the police station the next day to place another telephone call to Klamn. Detective Silva also recorded this conversation; this time, the recording equipment captured both S.A.K.'s voice and Klamn's voice.[2] Klamn was arrested thereafter. Detective Silva interrogated Klamn following his

---

[2] An audiotape of this conversation was admitted at trial, but is not part of the record on appeal.

arrest, and also recorded video of the interrogation.[3] During the interrogation, Detective Silva asked Klamn if he thought S.A.K. would lie. Klamn replied that she would not.

The State charged Klamn with five counts of child molestation in the first degree, four counts of rape of a child in the first degree, two counts of child molestation in the second degree, two counts of rape of a child in the second degree, and one count of indecent liberties with forcible compulsion. Klamn waived his right to a jury in favor of a bench trial. The trial court heard testimony from S.A.K., S.A.K.'s school friend, S.A.K.'s mother, Joshua Rees, Jackie Rees, Detective Silva, Sergeant Brian Hickey of the Chehalis Police Department, Debra Hall of St. Peter's Hospital Sexual Assault Clinic, Klamn's former roommate Jason Hack, and Klamn himself.

In its oral ruling, the trial court stated that it found "that the alleged victim here, [S.A.K.], was very credible." On the other hand, the trial court stated that Klamn "appeared to the Court to be very carefully parsing his words" during his testimony, the audiotaped telephone conversation, and the videotaped interrogation. The trial court further found "that there's also a lot of corroboration" of S.A.K.'s testimony. Accordingly, the trial court convicted Klamn as charged.

Based on the evidence presented at trial, the trial court found that the offense involved domestic violence because the victim was Klamn's biological daughter, that "this was an ongoing pattern of abuse," and that Klamn had

---

[3] The videotape of the interrogation was admitted at trial, but is not part of the record on appeal.

abused his position of trust. Thus, the trial court found that the State had proved three aggravating factors with respect to all 14 counts. The trial court sentenced Klamn to 198 months on counts I through V, 116 months on counts VI, VII, and XIV, and 600 months on counts VIII through XIII, all sentences to run concurrently.

On February 14, 2013, Klamn appealed. At that time, the trial court had not yet entered written findings of fact and conclusions of law. On October 3, 2013, the trial court entered written findings of fact and conclusions of law with respect to the trial. Thereafter, Division Two's commissioner granted Klamn the opportunity to file a supplemental brief, but he declined to do so. On December 18, 2013, the trial court issued written findings of fact and conclusions of law with respect to sentencing. In addition to the three aggravating factors, the trial court also entered findings that "Multiple offenses were committed, which results in some of the current offenses going unpunished, contrary to 9.94A.535(2)(c)" and that the "Victim was under 15 at the time of the offenses." The trial judge also filed a declaration averring that "I have not read Sean Michael Klamn's appellate briefing."

Division Two transferred the case to us for resolution.

II

Klamn contends that the trial court erred by failing to issue written findings of fact and conclusions of law, and that he is entitled to a new trial as a result. This is so, he asserts, because Criminal Rule (CrR) 6.1(d) requires the trial court to enter written findings of fact and conclusions of law following a bench trial.

However, because the trial court has since entered written findings of fact and conclusions of law, Klamn is not entitled to appellate relief.

"CrR 6.1(d) requires entry of written findings of fact and conclusions of law at the conclusion of a bench trial." State v. Head, 136 Wn.2d 619, 621-22, 964 P.2d 1187 (1998). The proper remedy for a failure to comply with CrR 6.1(d) is remand for entry of written findings of fact and conclusions of law. Head, 136 Wn.2d at 624. Reversal is only appropriate where the defendant has demonstrated actual prejudice. Head, 136 Wn.2d at 624.

On October 3, 2013, the trial court issued its written findings of fact and conclusions of law supporting the convictions. On December 18, 2013, the trial court issued its findings of fact and conclusions of law supporting the exceptional sentence. Because the trial court entered written findings of fact and conclusions of law, albeit untimely, remand is unnecessary.

Reversal is also inappropriate. "We will not infer prejudice . . . from delay in entry of written findings of fact and conclusions of law." Head, 136 Wn.2d at 625. Rather, as the Supreme Court stated in Head, "a defendant might be able to show prejudice resulting from the lack of written findings and conclusions where there is strong indication that findings ultimately entered have been 'tailored' to meet issues raised on appeal." 136 Wn.2d at 624-25. Here, the trial judge declared that he had not read Klamn's appellate brief. Thereafter, despite having the opportunity to file a supplemental brief addressing prejudice, Klamn did not do so. Accordingly, Klamn fails to demonstrate any prejudice from the trial court's delay in entering written findings of fact and conclusions of law.

Because written findings of fact and conclusions of law have been entered and because he failed to demonstrate any prejudice from the delay, Klamn is not entitled to appellate relief on this assignment of error.

III

Klamn contends that the trial court erred by sentencing him to 600 months in confinement. This is so, he asserts, because 600 months is clearly excessive for the crimes of which he was convicted. We disagree.

We review whether the length of a sentence is clearly excessive by using an abuse of discretion standard. State v. Oxborrow, 106 Wn.2d 525, 529-30, 723 P.2d 1123 (1986). A sentence is clearly excessive if it is "'clearly unreasonable, i.e., exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken.'" Oxborrow, 106 Wn.2d at 531 (quoting State v. Strong, 23 Wn. App. 789, 794, 599 P.2d 20 (1979)). "In other words, the reviewing court asks whether the grounds relied on, if any, in determining the length of the sentence are tenable and whether the amount of incarceration imposed is such that 'no reasonable person' would have imposed it." State v. Ross, 71 Wn. App. 556, 569, 861 P.2d 473, 883 P.2d 329 (1993) (citing State v. Harmon, 50 Wn. App. 755, 762, 750 P.2d 664 (1988)).

"'[T]he sentencing court need not state reasons in addition to those relied upon to justify the imposition of an exceptional sentence above the standard range in the first instance to justify the length of the sentence imposed.'" State v. Ritchie, 126 Wn.2d 388, 395, 894 P.2d 1308 (1995) (quoting Ross, 71 Wn. App. at 573). "Indeed, once a reviewing court has determined that the facts support

the reasons given for exceeding the range and that those reasons are substantial and compelling, there is often nothing more to say." Ross, 71 Wn. App. at 571-72. Accordingly, we first review whether an exceptional sentence is justified by the facts in this case.

Here, the trial court found three aggravating factors that justified an exceptional sentence: domestic violence, an ongoing pattern of abuse, and abuse of a position of trust. The facts adequately support the trial court's findings. Klamn is S.A.K.'s father, both a family member and someone who occupies a position of trust to a child. However, Klamn sexually abused his daughter for seven years. These facts support the trial court's finding of the three aggravating factors and justify an exceptional sentence.

Additionally, the trial court found that Klamn had committed 14 offenses, resulting in a high offender score and some offenses going unpunished. See RCW 9.94A.535(2)(c). The trial court also found that the victim was under fifteen at the time of the offenses. In light of these findings and the three aggravating factors, we cannot conclude that no reasonable person would have sentenced Klamn to 600 months.

The trial court did not err by sentencing Klamn to 600 months of confinement.

IV

In his statement of additional grounds, Klamn contends that the trial court erred by allowing S.A.K. to testify to Klamn's statements made during a telephone conversation with her. According to Klamn, this testimony was overly

prejudicial.[4] Although Klamn objected to the admission of S.A.K.'s testimony at trial, he did so on the basis of hearsay, not unfair prejudice. Issues raised for the first time on appeal are not reviewable unless they constitute "manifest error affecting a constitutional right." RAP 2.5(a)(3). Because Klamn's contention is raised for the first time on appeal and does not affect a constitutional right, we decline to consider it.

V

Klamn further contends, in his statement of additional grounds, that his convictions are not supported by sufficient evidence. This is so, he asserts, because he cannot be convicted on S.A.K.'s uncorroborated testimony and because the evidence violated the "corpus delicti rule." Neither assertion has merit.

Contrary to Klamn's assertion, there is no requirement that victim testimony be corroborated by physical evidence. Circumstantial evidence is not necessarily less reliable than direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Moreover, the trier of fact is entitled to make credibility determinations and believe or disbelieve any of the witnesses.[5] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Here, the trial court heard the testimony of ten witnesses, and determined that S.A.K. was more credible than Klamn. We do not disturb that determination. See Camarillo, 115 Wn.2d at

---

[4] Klamn also asserts that S.A.K.'s testimony "assumes facts not in evidence" and "constituted impermissible opinion testimony." These claims fail for the same reason.

[5] Further, contrary to Klamn's assertions, S.A.K.'s testimony was corroborated by other evidence. Seven witnesses testified consistent with S.A.K.'s version of events. The audio- and videotapes presented at trial also lent support to S.A.K.'s testimony.

71 (determinations of credibility not subject to appellate review).

Similarly, Klamn's convictions do not violate the "corpus delicti rule." The "corpus delicti rule" provides that "confessions or admissions of a person charged with a crime are not sufficient, standing alone, to prove the corpus delicti and must be corroborated by other evidence." State v. Aten, 130 Wn.2d 640, 655-56, 927 P.2d 210 (1996). Any self-incriminating statements made by Klamn[6] were far from the only evidence presented. Rather, S.A.K. testified as to her version of the events. Her testimony was corroborated by seven witnesses. The "corpus delicti rule" has no applicability to this case.

The trial court did not err by finding Klamn guilty and entering judgment on all 14 counts.[7]

Affirmed.

We concur:

---

[6] We assume that the statements to which Klamn refers were present on the audio- and videotapes, as we discern no self-incriminating statements from the record provided.

[7] Klamn further makes numerous claims of ineffective assistance against three of his attorneys. However, the record on appeal is not sufficient for us to review any of these claims.